Filed 3/30/16  Modified and Certified for Publication 4/18/16 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ISABELLA G., a Person Coming Under the Juvenile Court Law. | D068718 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. SJ12924) |
| v. | |
| ALEJANDRO G. et al., | |
| Objectors and Appellants. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Reversed and remanded with directions.

William D. Caldwell, under appointment by the Court of Appeal, for Objector and Appellant Alejandro G.

Serobian Law and Liana Serobian, under appointment by the Court of Appeal, for Objectors and Appellants John and Myrna F.

Jamie A. Moran, under appointment by the Court of Appeal, for Minor.

Thomas E. Montgomery, County Counsel, John E. Philips and Emily K. Harlan, Deputy County Counsel, for Plaintiff and Respondent.

The child's father and paternal grandparents[1] appeal the denial of the grandparents' petition for placement of the child.  (Welf. & Inst. Code,[2] § 388.) The father also appeals the order terminating parental rights.  (§ 366.26.)

The Legislature "command[s] that relatives be assessed and *considered* favorably, subject to the juvenile court's consideration of the suitability of the relative's home and the best interests of the child." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 320 (*Stephanie M*.).)  This case involves repeated requests by the child's grandparents for placement of the child, starting when the child was first detained in protective custody.  The San Diego County Health and Human Services Agency (the Agency) did not conduct an assessment of the grandparents' home as required under section 361.3, governing relative placement.  Instead, the Agency placed the child in the home of a nonrelative extended family member and secured the cooperation of the grandparents and other relatives by representing that the Agency could not change the child's placement for a year.  After a year, the grandparents again requested placement.  The Agency did not conduct an assessment of their home as required.  After reunification services were terminated, the Agency disregarded the grandparents' new request for placement.  The grandparents

---

[1]    Further references to Grandparents are to the paternal grandparents.

[2]    Further statutory references are to the Welfare and Institutions Code.

2

retained counsel and filed a section 388 petition. Only then did the Agency complete a relative home assessment, approving the placement in less than three weeks.

At the hearing on the petition, the juvenile court denied the grandparents' request to proceed under section 361.3, instead applying the caregiver adoption preference under section 366.26, subdivision (k). The Agency concedes the juvenile court erred in applying the adoption preference prior to terminating parental rights. The Agency maintains section 361.3 did not apply because the grandparents' request for placement was made after the reunification period ended and no new placement was necessary.

We conclude that when a relative requests placement of the child prior to the dispositional hearing, and the Agency does not timely complete a relative home assessment as required by law, the relative requesting placement is entitled to a hearing under section 361.3 without having to file a section 388 petition.[3] Consequently, we reverse the juvenile court's orders denying the grandparent's request for placement under section 366.26, subdivision (k), necessarily reverse the orders terminating parental rights, and remand for a relative placement hearing under section 361.3.

FACTUAL AND PROCEDURAL BACKGROUND

Isabella G. is the daughter of Adriana B. and Alejandro G. Isabella was born in August 2011. The family lived with Isabella's paternal grandparents, John (Grandfather) and Myrna F. (Grandmother). When Isabella was three months old, Adriana moved out of the home, leaving Isabella in Alejandro's and Grandmother's care. Grandmother was

---

[3]    We do not reach the issue of whether this rule applies after a section 366.26 hearing has been held.

3

Isabella's primary caregiver. Isabella spent weekends in the home of her maternal grandparents. Adriana also lived in their home, but was in and out of jail, as was Alejandro.

Adriana had a history of methamphetamine and marijuana use, and drug-related criminal offenses. Alejandro was addicted to heroin and had a drug-related criminal history. The paternal and maternal grandparents were generally aware of the parents' substance abuse problems. In January 2013, Grandfather asked Alejandro to leave the home. Isabella remained in Grandmother's care.

In July 2013, Adriana and Alejandro took custody of Isabella, who was 23 months old. The parental and maternal grandparents objected but did not intervene. Approximately a week after the parents resumed caring for Isabella, police arrested Adriana on felony fugitive warrants. Police discovered heroin, a used heroin syringe, marijuana, and other drug paraphernalia within Isabella's reach in the home. Alejandro and Adriana were arrested and incarcerated.

On July 25, the Agency detained Isabella in protective custody at Polinsky Center. Grandparents asked the Agency to place Isabella in their care and provided information to allow the Agency to complete a home evaluation. Grandmother said she had raised Isabella like a daughter. Alejandro asked the Agency to detain Isabella with Grandparents.

The Agency was not able to immediately detain Isabella with the paternal or maternal grandmothers. The maternal grandmother's drug-related criminal conviction disqualified her for placement and unsupervised visitation. Grandmother provided

4

documentation showing that her 1998 conviction for welfare fraud had been expunged, and that prosecutors had dismissed a 2002 charge of conspiracy to distribute marijuana shortly after it was filed. The Agency did not assess Grandmother's home for emergency detention or placement.

Isabella was not doing well at Polinsky Center. She was having trouble eating and sleeping. Out of concern for Isabella's well-being, the family identified Marisol O., whose sister was married to Alejandro's brother, as a caregiver. Marisol and her husband were licensed foster care parents. They had met Isabella at family events. On August 3, the Agency detained Isabella with Marisol as a nonrelative extended family member (NREFM).

On August 6, the Agency held a team decision meeting (TDM) with Marisol and Isabella's relatives. Citing health concerns, Marisol said she did not intend to care for Isabella permanently. The paternal and maternal grandparents and great-grandparents[4] asked to be considered for placement. The social worker said a home evaluation would

---

[4]     The great-grandparents repeatedly asked the Agency to place Isabella in their care. The Agency did not complete a relative home assessment on their home. In March 2015, the great-grandparents filed a petition requesting Isabella's placement. They told the court they recently learned Isabella could have been placed in their home at the outset of the case on an expedited emergency basis, and the social worker's statement that Agency could not move Isabella for a year because she had already had had two placements was not true. The juvenile court set an evidentiary hearing on the great-grandparents' petition for Isabella's placement and ordered the Agency to assess them for placement.

     After a hearing on the merits of their petition, which was held concurrently with Grandparents' section 388 petition, the juvenile court denied the great-grandparents' request for placement. Because they do not appeal the denial of their petition, in the interests of brevity, we focus on evidence related to Grandparents' requests for placement.

5

take from one to three months. The social worker told the family the Agency did not like to move a child more than twice in one year, and Isabella had already had two placements, one at Polinsky Center and one with Marisol. According the great-grandmother, the social worker said, "You'll have to wait a year until we can move Isabella again."

At the dispositional hearing on August 20, the social worker reported that the relatives had agreed that Isabella was doing well in Marisol's care and should not be moved to avoid any further trauma. A family visitation schedule was set up. Isabella would spend every other weekend (during the days) with Grandparents and alternate weekends with her great-grandparents.[5] Alejandro told the juvenile court he believed it was in Isabella's best interest to be placed with Grandparents. The juvenile court placed Isabella in the NREFM home, and ordered a plan of reunification services.

In reports prepared for the six-month review hearing, the social worker said Isabella was a happy, cheerful two year old who enjoyed playing with other children. There were no concerns about her developmental, behavioral, or emotional well-being. Isabella loved all her family members. At bedtime, she sang a good night song to all her family members.

During the first review period, Alejandro was in local custody, pending sentencing on felony burglary and drug charges. He was unable to participate in reunification services. Adriana remained sober. She visited Isabella almost every day. At the six-

---

5       The relatives consistently visited Isabella according to this schedule throughout the proceedings.

6

month review hearing in March, the court terminated Alejandro's reunification services and continued Adriana's services.

Nine days after the review hearing, Adriana tested positive for methamphetamine and was arrested. She was released on house arrest in July. In August, the social worker reported to the court that Grandmother asked to be evaluated for placement and a home assessment was in progress. This assessment did not occur.

A second TDM was held on August 19, 2014. Grandparents and the great-grandparents requested placement. Adriana opposed changing Isabella's placement. The social worker did not recommend moving Isabella, and stated relative placement would only be considered if a change of placement became necessary. The participants agreed Isabella would remain in Marisol's care during the reunification period, with the goal of reunifying with Adriana, and the Agency would work to approve Grandparents for overnight visits and assess the relatives' home for contingent placement. This assessment did not occur.

In November, Adriana stopped visiting Isabella and participating in services. She did not contact the social worker or the caregiver. In December, the juvenile court terminated reunification services and set a section 366.26 hearing.

An adoptions social worker was assigned to the case in January 2015. Grandparents contacted her and requested placement. The social worker met with them, collected their information, and referred them for a relative home assessment. The Agency decided not to conduct a relative home assessment because Isabella was in a stable prospective adoptive home.

7

In May, Grandparents retained an attorney and filed a section 388 petition seeking Isabella's placement. The juvenile court ordered an evidentiary hearing on the petition. The Agency then conducted an assessment and approved Grandparents' home for placement in less than three weeks.

A trial on Grandparents' section 388 petition, trailed by the 366.26 hearing, was held over several days in June, July and August 2015. The Agency opposed changing Isabella's placement. The social worker said Isabella had a strong bond with Marisol and her husband, who wanted to adopt her. Isabella consistently said she wanted to stay with Marisol or live with her Nana (Grandmother). When told about the possibility of moving, Isabella cried. The social worker was concerned removing Isabella from Marisol's care would be as traumatizing, if not more, than Isabella's initial removal from her parents. If Mirasol were unable to care for Isabella, the social worker would recommend placement with Grandparents because Isabella had lived with them, and they had cared for her when her parents were not available.

Grandmother testified she was present at Isabella's birth. She took care of Isabella while the parents worked. Adriana moved out of the home when Isabella was three months old. When Alejandro was incarcerated for a month in 2012, he gave a power of attorney for medical care for Isabella to Grandmother. In January 2013, Grandfather asked Alejandro to leave because he was misbehaving. Isabella remained in Grandmother's care. In June, the parents took Isabella from the maternal grandparents' home during her weekend visit.

8

When Isabella was detained at Polinsky, Grandmother visited her every day. She told the social worker she wanted Isabella placed in her care. Grandmother gave the social worker the documents pertaining to her criminal case. A short time later, the social worker changed. Grandmother telephoned the second social worker every day, sometimes twice a day, requesting placement. Grandmother gave the same documentation about her criminal case to the second social worker.

Grandmother understood that placement with Marisol was temporary and the Agency would evaluate her home for placement. A social worker told her they could move Isabella only twice a year, and she already had had two placements. The Agency would not consider moving Isabella for a year. A year later, at the second TDM, Grandmother again requested placement. The Agency ignored her request. When the third social worker was assigned to the case, Grandmother again asked for placement. The Agency telephoned her to say they were going to evaluate the home. The Agency called back and said the evaluation was cancelled. They did not give her a reason.

During Isabella's dependency proceedings, Grandparents cared for Isabella on Saturday and Sunday from 8:00 a.m. to 8:00 p.m. every other week. They recently started overnight visits. Grandmother picked up Isabella at school approximately three times a week. Marisol would call to tell her that Isabella was missing her, and Grandmother would spend a few hours with Isabella. Isabella was very happy at her house. She had her own bedroom and a dog.

Marisol testified there were concerns about her health at the first TDM but her condition was stable. Isabella's placement with her was intended to be temporary. At the

9

second TDM, Marisol said she believed Isabella would benefit from living with Grandparents. Isabella was very close to them. The social worker told her the Agency had decided Isabella should stay in her home.

Mirasol said Isabella had a different quality relationship with Grandparents than she did with her great-grandparents. Isabella grew up in Grandparents' home and was bonded to them. Isabella frequently asked for Grandmother. Marisol would telephone Grandmother to let her know Isabella was asking for her. If Marisol needed help, she would ask Grandmother to care for Isabella for a few hours until she was off work. Isabella was happy to be with her grandmother.

Marisol wanted to adopt Isabella. Isabella had been in her care for two years and had a sense of security and love. Isabella called her "Titi" or "Titi Mari." Once in a "blue moon," Isabella would call her "mommy." Marisol said whenever Isabella went anywhere, she would ask, " 'I come back to you, Titi, right?' And I would say, 'Yes, mamas, you come back home.' "

Marisol did not believe Isabella would be harmed if moved to a relative's home. However, Isabella would be affected because she was attached to Marisol and her husband. Marisol believed it was in Isabella's best interest to have contact with her family.

Adria B. shared an office with Marisol at an elementary school. During the past four months, she saw Isabella approximately once a week. Isabella was very bonded with Marisol. Adria overheard Isabella tell another child, "That's where my mom works."

10

Adriana testified Isabella adapted well to all the changes in her life. She was bonded with her paternal and maternal families. There was no limit to Isabella's love for them. Adriana believed Isabella would thrive in the great-grandparents' care.

Alejandro testified it was in Isabella's best interest to be with Grandparents. Their home was her home.

After hearing argument concerning whether the relative placement preference[6] or the caregiver adoption preference[7] applied, the juvenile court ruled the relative placement preference did not apply because reunification services had been terminated. The juvenile court found that Marisol qualified for the caregiver adoption preference because she was Isabella's caregiver and the Agency was recommending she adopt Isabella.

The juvenile court said notwithstanding the applicability of the caregiver adoption preference, its ruling was entirely predicated on Isabella's best interest. Isabella had bonded with Marisol and was starting to think of Marisol as her mother. The juvenile court found that Isabella had substantial emotional ties to Marisol and removal from her care would be seriously detrimental to Isabella. The juvenile court also found that Isabella had a strong bond with Grandparents, and they would provide a safe, nurturing

---

[6] Section 361.3 requires the agency and the juvenile court to give preferential consideration to a request for placement by the child's grandparent, aunt, uncle or adult sibling.

[7] Section 366.26, subdivision (k) establishes a preference for adoption by any person who, as a relative caretaker or foster parent (generically, caregiver), has cared for a dependent child for whom the court has approved a permanent plan for adoption, or who has been freed for adoption, if the agency making the placement determines that the child has substantial emotional ties to the caregiver and removal from caregiver would be seriously detrimental to the child's emotional well-being.

11

and loving home for her. However, Grandparents did not meet their burden under section 388 to show a change of placement was required.

The juvenile court then turned to the section 366.26 hearing. Alejandro and Adriana asked the court to order a plan of guardianship. The juvenile court terminated parental rights and designated Marisol and her husband as Isabella's prospective adoptive parents.

DISCUSSION

A

*Issues on Appeal and Standard of Review*

Alejandro and Grandparents (collectively, Appellants) contend the juvenile court erred by applying the caregiver adoption preference prior to terminating parental rights. Appellants argue the juvenile court should have applied the relative placement preference in view of Grandparents' repeated requests for placement from the beginning of the case and the Agency's significant, unwarranted delay in assessing their home. They assert the error was prejudicial.

The Agency concedes the juvenile court erred in applying the preference for caregiver adoption before selecting a plan of adoption or terminating parental rights.[8] It asserts the error was harmless because the juvenile court's ruling was based entirely on

---

[8] We need not consider the Agency's contention the father lacks standing to appeal. Even if father were not aggrieved by the juvenile court's ruling, he would have "a status loosely akin to that of amicus curiae." (*In re K.C.* (2011) 52 Cal.4th 231, 239.) Grandparents and father raise the same issues on appeal, and Grandparents formally join in father's briefing. We therefore consider the merits of the issues raised on appeal.

12

Isabella's best interests. The Agency acknowledges its failure to timely complete the relative home assessment was a significant contributing factor to Grandparents' delay in filing their section 388 petition, but argues the relative placement preference did not apply because Grandparents' petition was filed after the reunification period and no new placement was necessary. Alternatively, the Agency argues even if the relative placement preference applied, any error was harmless.

We accept the Agency's concession the juvenile court erred when it applied the caregiver adoption preference at the section 388 hearing. We therefore address whether the juvenile court erred when it declined to apply the relative placement preference under section 361.3.

Our review of the interpretation and application of a statue is de novo. (*In re Dakota J*. (2015) 242 Cal.App.4th 619, 627.) "In construing a statute, our role is to ascertain the Legislature's intent so that we may effectuate the purpose of the law. [Citation.] We consider the words of the statute first, because they are normally the most reliable indicator of legislative intent." (*Id*. at p. 628.)

B

*The Relative Placement Preference*

"Section 361.3 gives 'preferential consideration' to a relative request for placement, which means 'that the relative seeking placement shall be the first placement to be considered and investigated.' (§ 361.3, subd. (c)(1).)" (*Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1032 (*Cesar V*.).) The intent of the Legislature is "that relatives be assessed and *considered* favorably, subject to the juvenile court's

13

consideration of the suitability of the relative's home and the best interests of the child."

(*Stephanie M.*, *supra*, 7 Cal.4th at p. 320.)

The Agency is *required* to assess those relatives seeking placement according to the factors described in section 361.3, subdivision (a) (placement factors)[9] and must document those efforts in the social study prepared under section 358.1. (§ 361.3, subd. (a) (final para.).) When considering whether to place the child with a relative, the juvenile court must apply the placement factors, and any other relevant factors, and exercise its independent judgment concerning the relative's request for placement. (*Cesar V.*, *supra*, 91 Cal.App.4th at p. 1033.)

Ideally, the statutory scheme contemplates the Agency has identified and approved the child's relatives for placement before the dispositional hearing. However,

---

[9]     These factors include, in pertinent part: "(1) The best interest of the child, including special physical, psychological, educational, medical, or emotional needs. [¶] (2) The wishes of the parent, the relative, and child, if appropriate. [¶] (3) The provisions of Part 6 (commencing with Section 7950) of Division 12 of the Family Code regarding relative placement. [¶] . . . [¶] (5) The good moral character of the relative and any other adult living in the home, including whether any individual residing in the home has a prior history of violent criminal acts or has been responsible for acts of child abuse or neglect. [¶] (6) The nature and duration of the relationship between the child and the relative, and the relative's desire to care for, and to provide legal permanency for, the child if reunification is unsuccessful. [¶] (7) The ability of the relative to do the following: [¶] (A) Provide a safe, secure, and stable environment for the child. [¶] (B) Exercise proper and effective care and control of the child. [¶] (C) Provide a home and the necessities of life for the child. [¶] (D) Protect the child from his or her parents. [¶] (E) Facilitate court-ordered reunification efforts with the parents. [¶] (F) Facilitate visitation with the child's other relatives. [¶] (G) Facilitate implementation of all elements of the case plan. [¶] (H) Provide legal permanence for the child if reunification fails. [¶] . . . [¶] (I) Arrange for appropriate and safe child care, as necessary. [¶ (8) The safety of the relative's home."

14

"[c]onsistent with the legislative intent for children to be placed immediately with a responsible relative, [section 361.3] does not limit the county social worker's ability to place a child in the home of an appropriate relative or a nonrelative extended family member *pending the consideration of other relatives who have requested preferential consideration*." (§ 361.3, subd. (b), italics added.)

Section 361.3, subdivision (d) addresses procedures to identify relatives for placement after the dispositional hearing. (*In re Joseph T., Jr.* (2008) 163 Cal.App.4th 787, 793-794 (*Joseph T.*).) "Subsequent to [the dispositional hearing], whenever a new placement of the child must be made, consideration for placement shall again be given as described in this section to relatives who have not been found to be unsuitable and who will fulfill the child's reunification or permanent plan requirements. In addition to the factors described in subdivision (a), the county social worker shall consider whether the relative has established and maintained a relationship with the child." (§ 361.3, subd. (d).)

The Agency argues because the reunification period had ended and a new placement was not necessary, the juvenile court was not required to review the relative placement request under section 361.3. In support, it relies on *In re Lauren R.* (2007) 148 Cal.App.4th 841 (*Lauren R.*) and *In re Sarah S*. (1996) 43 Cal.App.4th 274 (*Sarah S.*) Those cases do not assist the Agency. As the Agency acknowledges, in *Lauren R.*, the juvenile court had already selected a permanent plan of adoption for the child before addressing the relative's request for placement. (*Lauren R.*, *supra*, 148 Cal.App.4th at p. 856.) *Sarah S*. bears no factual resemblance to the circumstances here. That case

involves a relative who was granted placement of the child early in the dependency proceedings but then handed the child over to nonrelatives for two years, lying to the court about the child's whereabouts. During the permanent plan hearing, the relative contested the agency's recommendation to allow the child's caregivers to adopt her. The reviewing court affirmed the juvenile court's decision to deny the relative's request to apply section 361.3. (*Sarah S*., *supra*, 43 Cal.App.4th at pp. 278-281, 288.)

The Agency argues Isabella did not need a new placement and therefore the juvenile court was not required to consider Grandparents' request under section 361.3. In *Cesar V*., a division of this court held that "the Legislature did not intend to limit the purpose of the relative placement preference to reunification efforts." (*Cesar V*., *supra*, 91 Cal.App.4th at p. 1032.) In addition, our colleagues in the Second District explicitly rejected the argument section 361.3, subdivision (d) *limits* the application of the relative placement preference. (*Joseph T*., *supra*, 163 Cal.App.4th at p. 793.) The court stated, "[t]he plain language of subdivision (d) states that when a 'new placement' is required the procedures 'described in this section' must be followed in the same way as when there is an initial placement, including the affirmative duty of the court, under subdivision (a) of section 361.3, to order the parents to disclose the names and pertinent family information of relatives and the obligation of the social worker to follow through on that information, contact all the relatives whose names have been provided, and evaluate those relatives desiring placement. (§ 361.3, subd. (a).) In contrast, at least through the reunification period, when a relative voluntarily comes forward at a time when a new placement is *not* required, the relative is entitled to the preference and the court and the social worker are

16

obligated to evaluate that relative (but the court need not again order the parents to disclose other possible relative placements)." (*Joseph T.*, *supra*, at p. 794.) We agree with *Joseph T.* the relative placement preference applies when a relative seeks placement after the dispositional hearing even if no new placement is required.[10] (*Id.* at p. 795.)

     *Joseph T.* left open the issue whether the relative is entitled to the preference after reunification services have been terminated and no new placement of the child is required. (*In re R.T.* (2015) 232 Cal.App.4th 1284, 1300 (*R.T.*) [it is currently unsettled whether a relative is entitled to preference when requested late in the proceedings, when the child is in a stable placement following the disposition hearing and termination of reunification services].) In *R.T.*, a case with many similarities to Isabella's case,[11] the reviewing court held that section 361.3 applied "where the relatives invoked the preference *before* the dispositional hearing, the agency and court failed to apply it at disposition, and the error was timely raised by a section 388 motion." (*R.T.*, *supra*, 232

---

[10]    A bill is currently pending in the Legislature that "would require that consideration for placement with a relative subsequent to the disposition hearing be given without regard to whether a new placement of a child must be made, and would direct the social worker to report and the court to consider additional enumerated factors in making this determination." (Assem. Bill No. 381 (2015-2016 Reg. Sess.)

[11]    In *R.T.*, "[t]he agency did not evaluate the relatives for placement, either before or after the combined jurisdictional and dispositional hearing. The agency did complete the preliminary step of a home study of the paternal aunts but, as noted above, did so without any intention of making a full assessment of the appropriateness of a relative placement." (*R.T.*, *supra*, 232 Cal.App.4th at p. 1299.) A few months later, the home study was completed and the aunt and uncle's home found suitable for placement; however, the agency refused to evaluate the aunt and uncle for placement. "The agency simply decided, without reference to or consideration of statutory standards, that R.T. was in a good placement and would not move him." (*Ibid.*)

17

Cal.App.4th at p. 1300; but see *Cesar V.*, 91 Cal.App.4th at pp. 1035-1036 [relative was entitled by law to a hearing on the placement issue and was not required to file a section 388 petition].)

We are not persuaded by the Agency's attempts to distinguish *R.T.* from this case. The Agency argues, unlike *R.T.*, it did not refuse to consider Grandparents' request for placement at the beginning of the case. The Agency claims it initiated a home assessment before the disposition hearing but was unable to approve Grandparents for placement because of Grandmother's criminal record. The record shows that the Agency did not follow through with any criminal record exemption or assess Grandparent's home for placement at that time. When the Agency did conduct a home assessment, it approved Grandparents' home within three weeks, indicating that had the Agency fulfilled its statutory responsibility when Grandparents first requested placement, their home likely would have been approved *prior to the dispositional hearing*.

The Agency also contends in this case, unlike *R.T.*, all the parties agreed Isabella should remain in Marisol's care and did not request a hearing on relative placement at the disposition hearing. This argument is disingenuous. The record clearly shows the social worker secured the relatives' agreement after telling them the Agency was unable to move Isabella from her placement with Marisol for a year, a child could only have two placements in a year and Isabella had had two placements, and a home study would take up to three months to complete. Grandparents' acceptance of the proposed NREFM placement was based on the social worker's misinterpretation or misrepresentation of the law. (See § 361.3, subd. (b) [social worker may place a child in the home of an

18

appropriate relative or NRFEM pending the consideration of other relatives who have requested preferential consideration].)

The Agency acknowledges its failure to timely complete the relative home evaluation process was a significant contributing factor to Grandparents' delay in filing their section 388 petition. Nevertheless, the Agency argues Grandparents waited much longer to file a formal petition for placement than did the relatives in *R.T.* We reject the argument the relative is required to file a section 388 petition to trigger a relative home evaluation, and may lose his or her right to preferential consideration for placement under section 361.3 if a section 388 petition is not timely filed. The obligation to assess a relative's home is triggered by the relative's request for placement of the child. (§ 361.3, subd. (a).) In addition, the record in this case is more egregious than in *R.T.* Here, social workers repeatedly assured Grandparents the Agency would assess their home for placement. The Agency repeatedly reneged on those promises without explanation. As in *R.T.*, the record shows Agency "simply decided, without reference to or consideration of statutory standards, that [Isabella] was in a good placement and would not move [her]." (*R.T.*, *supra*, 232 Cal.App.4th at p. 1299.)

Grandparents requested placement prior to the detention, jurisdictional and dispositional hearings. The Agency did not comply with its obligation to conduct a home assessment of the Grandparents. Relying on the Agency's misrepresentation that it could not move Isabella for a year (see § 361.3, subd. (b)), Grandparents requested placement before the 12-month review hearing. The Agency did not comply with its obligation to assess Grandparents' home for placement. (*Joseph T.*, *supra*, at p. 795.) Grandparents

19

requested placement after the case was referred for a section 366.26 hearing. The Agency did not conduct a home assessment until Grandparents retained counsel and filed a section 388 petition. The record shows the Agency disregarded the Legislative preference for relative placement throughout Isabella's dependency case. The Agency's conduct was inconsistent with the Legislature's clear preference for relative placement. (*Stephanie M.*, *supra*, 7 Cal.4th at p. 320 [Legislature's intent is to command that relatives be assessed and *considered* favorably, subject to the juvenile court's determination]; Fam. Code, § 7950 [placement shall, if possible, be made in the home of a relative, unless the placement would not be in the best interest of the child].)

Contrary to the Agency's assertion, the relative placement preference applies after the reunification period even when no new placement is necessary. (*Cesar V.*, *supra*, 91 Cal.App.4th at p. 1032 [Legislature did not intend to limit preference to reunification period]; *Joseph T.*, *supra*, 163 Cal.App.4th at p. 794 [preference applies after dispositional hearing where no new placement is required]; *R.T.*, *supra*, 232 Cal.App.4th at p. 1300) [preference applies where relatives requested placement before dispositional hearing].)

We conclude that the juvenile court erred when it determined section 361.3 did not apply because reunification services had been terminated. The juvenile court further erred when it imposed a burden on Grandparents under section 388 to show that a new placement was necessary and that the *change of placement* was in the child's best interest. (*Cesar V.*, *supra*, 91 Cal.App.4th at pp. 1035-1036 [relative was entitled by law to a hearing on placement].) Section 361.3 *requires* the court to give preferential

20

consideration to a request by the child's relative for placement, including an assessment of whether *placement* with a relative is in the child's best interest.

C

*The Error Was Not Harmless*

The Agency contends any error in not applying the relative placement preference was harmless. It argues there is no reasonable probability of a different outcome on remand and additional proceedings would serve only to disrupt Isabella's permanency and stability. We conclude that the error resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818.)

Section 361.3 requires the juvenile court to evaluate a number of factors, including the child's best interest. Here, the court failed to apply those factors, "instead applying a generalized best interest test unguided by the relevant statutory criteria." (*In re R.T.*, *supra*, 232 Cal.App.4th at p. 1300.) "When the proceedings take place under an inappropriate statute, even one requiring similar findings, the parties are not afforded the opportunity to tailor their case to the correct statute, and the trial court cannot fulfill its responsibility to make findings of fact within the provisions of that statute." (*In re V.F.* (2007) 157 Cal.App.4th 962, 973, superseded by statute on other grounds as stated in *In re B.H.* (2016) 243 Cal.App.4th 729, 737.)

We reject the Agency's argument the application of the relative placement factors would not lead to a different outcome on remand. The record shows Grandmother was Isabella's primary caregiver from birth until she was almost two years old. Isabella missed Grandmother and was happy to be with her. Marisol facilitated additional contact

21

with Grandmother at Isabella's request, sometimes as often as three times a week. Isabella had her own bedroom at her Grandparents' home. At the second TDM, Marisol recommended Isabella be placed with Grandmother. When asked, Isabella consistently said she wanted to stay with Marisol or live with Grandmother. Marisol believed Isabella would be affected if returned to Grandmother's care, but would not suffer any harm. The Agency had approved Grandparents' home for placement. Focusing on the history and quality of Isabella's relationship with Grandmother instead of on the quality of Isabella's relationship with her caregiver may lead to a different outcome on remand. We leave that determination to the sound discretion of the juvenile court under section 361.3.

DISPOSITION

The juvenile court's order denying Grandparents' section 388 petition to modify the previous placement order is reversed. We necessarily reverse the orders terminating parental rights and designating the caregivers as the child's prospective adoptive parents, and the finding that removal from the caregivers would be seriously detrimental to the child's well-being. (§ 366.26, subd. (b), (k), (n).) The matter is remanded for a hearing on Grandparents' request for placement under section 361.3.

O'ROURKE, J.

WE CONCUR:

NARES, Acting P. J.

IRION, J.

Filed 4/18/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ISABELLA G., a Person Coming Under the Juvenile Court Law. | D068718 (Super. Ct. No. SJ12924) |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | ORDER DENYING REHEARING, |
| Plaintiff and Respondent, | MODIFYING OPINION, |
| v. | AND |
| ALEJANDRO G. et al., | CERTIFYING OPINION FOR PUBLICATION |
| Objectors and Appellants. | [NO CHANGE IN JUDGMENT] |

THE COURT:

The petition for rehearing is denied.

It is ordered that the opinion filed herein on March 30, 2016, be modified as follows:

1.  On page 17, footnote 10 is deleted in its entirety, which will require renumbering of all subsequent footnotes.

2. On page 19, the following footnote (now footnote 11) is added to the last full sentence of the last paragraph that reads "The obligation to asses a relative's home is triggered by the relative's request for placement of the child."

> "If an assessment of a relative's home is pending at the time of the dispositional hearing, the juvenile court should proceed with the dispositional hearing and set a hearing under section 361.3 to review the relative placement request as soon as practicable. (See § 361.3, subd. (b.) At a review hearing, if any relatives have come forward seeking the child's placement, the court may also set a section 361.3 hearing pending completion of the relative's home assessment. (§§ 361.21, 361.22.) Notwithstanding this procedure, a relative seeking placement of the child is entitled to file a petition under section 388 to trigger a relative placement assessment and/or request a hearing under section 361.3. However, in determining whether the child should be placed with the relative, the juvenile court should not substitute the generalized best interest showing required under section 388 for its independent assessment of the relevant statutory criteria under section 361.3. (See *In re R.T.*, *supra*, 232 Cal.App.4th at p. 1300.)"

3. On page 20, the last full sentence beginning the last paragraph, which reads:

> "Contrary to the Agency's assertion, the relative placement preference applies after the reunification period even when no new placement is necessary."

is replaced with the following sentence (leaving the case citations following the sentence intact):

> "Prior case law does not preclude the application of the relative placement preference after the reunification period, even when no new placement is necessary."

The opinion in this case filed March 30, 2016, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of

2

Court, rule 8.1105(c), the requests pursuant to California Rules of Court, rule 8.1120(a) for publication are GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

There is no change in the judgment.


NARES, Acting P. J.

Copies to:  All parties

3