Filed 10/12/22  In re A.B. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re A.B. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. D.B., Defendant and Appellant. | E078404 (Super.Ct.Nos. J281896, J281897) OPINION |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Affirmed.

Joanne D. Willis Newton, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Svetlana Kauper, Deputy County Counsel, for Plaintiff and Respondent.

1

D.B. (father) contends that, after his two toddler-age children were removed from his custody, the juvenile court and Children and Family Services (Agency) mishandled his repeated requests to place them with his brother, C.B., and his brother's wife, J.B. (collectively the B.'s). He made his last such request by means of a Welfare and Institutions Code section 388[1] petition, after the juvenile court had already ordered adoption as the permanent plan, terminated reunification services, and set a section 366.26 hearing. This is an appeal from the denial of that section 388 petition.

We will hold that it is too late to challenge the handling of the father's first two such requests. In response to his third request, the juvenile court properly told him that he would have to file a section 388 petition. When he did, it properly denied the petition, because (1) there were no changed circumstances since the most recent order approving the current placement; and (2) the juvenile court had already ordered adoption as the permanent plan, which meant that the relative placement preference (§ 361.3) no longer applied (at least, not when invoked by the father, rather than by a relative).

I

GENERAL FACTUAL AND PROCEDURAL BACKGROUND

The father and A.E. (mother) have two children together — T.B., a boy born in 2018, and A.B., a girl born in 2019 (collectively the younger children). The mother also has three older daughters from previous relationships (collectively the older siblings).

---

[1] All further statutory citations are to the Welfare and Institutions Code.

In August 2019, acting on evidence that the father had sexually abused the older siblings as well as evidence of domestic violence, the Agency filed dependency petitions regarding all five children.[2]

Initially, the children were detained from the father but allowed to remain with the mother. However, it soon appeared that the mother had known about the sexual abuse and had failed to protect the older siblings. Therefore, later in August 2019, the Agency detained the children from the mother and placed them in foster care. In December 2019, they were placed with her again, but she absconded with them to Arkansas; in March 2020, they were located there, returned to California, and removed from the mother's custody again.

In July 2020, at the jurisdictional/dispositional hearing, the juvenile court found that it had jurisdiction over all of the children — as to the younger children, based on failure to protect (§ 300, subd. (b)), sexual abuse (*id*., subd. (d)), and abuse of a sibling (*id*., subd. (j)). It found the father to be the presumed father of the younger children. It ordered reunification services for the mother but denied them to the father.

---

**2** Because the second-oldest girl's father claimed Indian ancestry, the juvenile court continued the dispositional hearing as to her only. After that, with trivial exceptions, she and her father are not mentioned in the record. The father suggests that she successfully reunified with her father, but on this record, that is speculation.

We will use "older siblings" to refer to the two or three who were still the subject of the dependency at any given time.

3

Initially, the juvenile court denied the father any visitation. At the jurisdictional/dispositional hearing, however, it allowed him supervised visitation for two hours twice a month, on condition that he sign a visitation agreement. He refused to sign the agreement because it denominated him "visitor" rather than "father." Thus, he continued to have no visitation.

In March 2021, at the 12-month review hearing, the juvenile court terminated the mother's reunification services, ordered adoption as the permanent plan, and set a section 366.26 hearing. The parents did not file a writ petition.

In July 2021, at the section 366.26 hearing, the juvenile court ordered a permanent plan of legal guardianship for the older siblings and dismissed the dependency as to them. As to the younger children, it continued the section 366.26 hearing.

II

FACTUAL AND PROCEDURAL BACKGROUND

REGARDING RELATIVE PLACEMENT

A.     *Placement at the Jurisdictional/Dispositional Hearing*.

At a hearing in August 2019, the father asked to have his aunt L.C. and his brother C.B. assessed for placement. L.C. and the B.'s also submitted written requests for placement.

Sometime in or before November 2019, social workers interviewed L.C. She said she did not believe that the father had committed sexual abuse: "In my personal opinion, I don't think that he molested the girls. I haven't seen anything wrong . . . . I don't think

4

he initiated anything. . . . I know some of the stuff wasn't true. He never touched her. In my heart, he didn't do it. . . . They said that he walked around naked. I don't think that's true. I think they walked in on him."

The Agency recommended against placement with L.C. "due to her tendency to be protective of [the father] and not believing that the children suffered any abuse."

Between December 25, 2019, when the mother absconded with the children, and sometime in March 2020, when they were removed from her again, placement was not an issue.

On May 6, 2020, a social worker interviewed the B.'s. Unlike L.C., they accepted the allegations against the father. J.B. said, "Whatever the kids are saying. I have to believe is true. I don't think the children lie." C.B. said, "[I]t was investigated so should be true." They said they wanted placement of the younger children but not of any of the older siblings. They explained, "[T]he older children are not family."

At the time, there was a foster home pending approval that was willing to take all five children. Moreover, "[t]he children informed [the social worker] that they want[ed] to stay together." For this reason, the Agency recommended against placement with the B.'s. On June 1, 2020, all five children were, in fact, placed together with a Ms. V.

On July 27, 2020, at the jurisdictional/dispositional hearing, the juvenile court found that: "Relatives [L.C.] and [the B.'s] were assessed, and it is not in the best interests of [the younger] children . . . to place due to [L.C.] not believing the allegations and [the B.'s] only being able to provide a home for two relative (2) children."

5

The minute order, however, did not correctly reflect this finding. It stated: "The family members, [L.C.], [J.B.], [C.B.], w[ere] assessed, and it is not in the best interests of the child(ren) to place due to their lack of protective capacity and close involvement with the father."

B.    *Placement After the Younger Children Were Removed*

      *from Their Placement with the Older Siblings.*

Sometime before mid-January 2021, the younger children began having supervised visitation with L.C. and the B.'s for two hours once a month. They enjoyed the visits.

On January 16, 2021, the younger children were removed from their placement with the older siblings and placed with the R.'s. They had been placed with the R.'s before, from August to November 2019 and from March to June 2020. They continued to call the R.'s "mom" and "dad." The previous foster mother believed they would be happier with the R.'s.

In an "Additional Information to the Court" report (also known as a 6.7 report), the social worker said: "The paternal relatives, [the B.'s] and [L.C.,] are not appropriate for placement. . . . The children are bonded to the foster parents and refer to them as 'mama' and 'papa.' The relatives have made statements that have le[d] the undersigned

to believe that they will not protect the children from the father. . . .[3] The relatives have been ruled out under CFS 361.3."

On March 8, 2021, at the 12-month review hearing, the father asked to have four (unspecified) relatives assessed for placement. The juvenile court directed him to give their names to counsel for the Agency. Counsel for the Agency responded, "Many of [the father]'s relatives have already been ruled out by the Court, so I would ask those names not be re-submitted." The juvenile court did not rule on counsel's request.

The juvenile court found that "[t]he child's [*sic*] placement is appropriate." It ordered adoption as the permanent plan,[4] terminated reunification services, and set a section 366.26 hearing.

C.      *Requiring the Father to File a Section 388 Petition*.

On November 3, 2021, at the continued section 366.26 hearing, four relatives were present: L.C., the B.'s, and the father's mother M.C. The father's counsel requested a contested hearing on relative placement. Counsel for the Agency argued that placement with L.C. and the B.'s had "already been ruled out by the Court. That's already an order that's been made." The juvenile court set a hearing solely with respect to placement with

---

[3]      The social worker necessarily was relying on *L.C.'s* previous statements and/or the incorrect minute order. She did not reinterview *the B.'s* until January 2022.

[4]      The Agency says that the juvenile court ordered adoption as the permanent plan, citing two minute orders. The father correctly points out that it did not do so in those particular minute orders. The fact is, however, that it had already done so at the 12-month review hearing. (See § 366.21, subd. (f)(1) [at 12-month review hearing, "the court shall determine the permanent plan for the child"].)

7

M.C.; it told the father's counsel, "[I]f you need to file any 388 petition, you may do so." It further continued the section 366.26 hearing.

D.     *The Father's Section 388 Petition.*

In December 2021, the father filed a section 388 petition, seeking an assessment of and/or placement with the B.'s. The order that he asked the juvenile court to change was the July 27, 2020 dispositional order, which had found that it was not in the younger children's best interests to place them with the B.'s. As changed circumstances, he noted that sometime before March 2021, the younger children had been removed from their placement with the older siblings and placed separately.

The juvenile court ordered the Agency to file a response to the petition and set a hearing on whether it should hold an evidentiary hearing.

On January 11, 2022, a social worker reinterviewed the B.'s. Once again, they accepted that the father had been involved in domestic violence and in "inappropriate behavior" with the older siblings.

The social worker also interviewed the older siblings. They said they did not want the younger children placed with the B.'s, because "the father . . . is close to his brother, [C.B.], and would be at their home all the time. In addition, they would not be able to see [the younger children] because they would not be comfortable visiting the[m] in the home of [the B.'s]."

The social worker noted that the R.'s "have had the children in their home on and off over the last two and a half years. The children are bonded to the caregivers and have

8

built a strong attachment with them.  In addition, the caregivers have demonstrated a commitment to maintain the[ir] relationship . . . with their older siblings. . . .  The children are bonded to the caregivers and call them 'mom' and 'dad.'"

The Agency recommended that placement with the B.'s would not be in the best interest of the children.

At the hearing on the section 388 petition, counsel for the Agency argued that the relative placement preference did not apply because "the child [*sic*] has been placed.  If the child [*sic*] had to be moved again, then, that would be triggered . . . ."  "Also, the caretaker preference applies under 366.26(k)."  She further argued that there were no changed circumstances; citing the July 27, 2020 minute order and the subsequent 6.7 report (both, as already noted, incorrect), she claimed the B.'s had been ruled out because they were not "protective."

Counsel for the father responded that the father's relatives should have been reassessed when the younger children were removed and placed with the R.'s, but they were not.  "[T]hese children were moved, and it didn't trigger relative assessment like it should have."  He also noted that the minute order and the 6.7 report were incorrect, and the B.'s had actually been ruled out only because they could not take all five children.

The juvenile court denied the petition.  It found that there were no changed circumstances, because the B.'s "ha[d] been previously assessed and ruled out for placement due to their lack of being able to protect the children."  It further found that the petition was not in the best interests of the children, because "the older children . . . do

9

not believe it would be in the best interest of [the younger children] to be removed from their placement. . . .  They have spent the majority of their life with their current caregivers who they refer to as 'Mom' and 'Dad.'"

III

DISCUSSION

A.     *The Relative Placement Preference*.

Section 361.3 creates the relative placement preference.  It provides:  "In any case in which a child is removed from the physical custody of his or her parents . . . , preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative . . . ."  (§ 361.3, subd. (a).)  It lists eight factors that the court and the social services agency must consider in determining whether to place a child with a relative.  (§ 361.3, subds. (a)(1)-(a)(8).)

In addition, "whenever a new placement of the child must be made, consideration for placement shall again be given . . . to relatives who have not been found to be unsuitable and who will fulfill the child's reunification or permanent plan requirements."  (§ 361.3, subd. (d).)

"'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated."  (§ 361.3, subd. (c)(1).)  Thus, "[t]he relative placement preference . . . is not a relative placement *guarantee* [citations] . . . ."  (*In re Joseph T.* (2008) 163 Cal.App.4th 787, 798.)

10

B.      *Discussion.*

1.      *Placement at the jurisdictional/dispositional hearing.*

The father argues that the Agency and the juvenile court violated the relative placement reference at or before the jurisdictional/dispositional hearing.

We lack jurisdiction to consider this contention. The father did not file a notice of appeal from the dispositional orders. "If no timely appeal is taken from a dependency order, the order is final and binding, the issues determined by the order are res judicata, and the order may not be attacked on appeal from a later appealable order. [Citations.]" (*In re A.J.* (2022) 77 Cal.App.5th 7, 16-17; see also *In re Isaiah W.* (2016) 1 Cal.5th 1, 10.)

The Agency is a little confused on this point. It does contend that we lack jurisdiction, but only because the father's notice of appeal did not specify that he was appealing from the dispositional orders. Thus, it seems to assume that the dispositional orders were still appealable, if properly specified in the notice of appeal.

Not so. The dispositional orders were filed on July 27, 2020. A dispositional order is immediately appealable. (§ 395; *In re B.P.* (2020) 49 Cal.App.5th 886, 889.) The father's time to appeal from that order ran 60 days later (Cal. Rules of Court, rule 8.406(a)(1)), on September 25, 2020. He actually filed his notice of appeal on January 18, 2022. Even if he *had* specified that he was appealing from the dispositional orders,

11

that would make no difference; we would still have no jurisdiction to consider an attack on those orders.[5]

This is not to say that, if we had jurisdiction, the father's argument would have merit. He forfeited his present contention by failing to raise it below. He and the B.'s requested that the B.'s be considered for placement. The Agency did consider them, but it concluded that placement with them was not in the best interests of the children. At the jurisdictional/dispositional hearing, the father did not argue otherwise. He also did not argue that the B.'s had not been properly considered.

"[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.]" (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) In particular, a parent who is asserting a failure to follow the relative placement preference must have raised it in the trial court. (*In re A.K.* (2017) 12 Cal.App.5th 492, 501.)

In his reply brief, the father concedes that he is not seeking reversal of the dispositional orders.[6] Rather, he claims that the asserted errors leading up to the

_____

[5] The Agency contends that the father lacks standing to challenge a failure to place a child with a relative. Because we conclude that we lack jurisdiction for an even more fundamental reason, we do not reach this contention as to the dispositional orders.

[6] In support of this, he cites his opening brief, thus implying that this was true all along. In his opening brief, however, he asked us to "reverse [the] orders denying relative placement . . . ." That would seem to encompass the dispositional orders.

12

jurisdictional/dispositional hearing "illuminate" the asserted error in denying his section 388 petition.

We may assume, without deciding, that the father could collaterally attack the findings in the dispositional orders by means of a section 388 petition. However, he did not. In connection with his section 388 petition, he did not discuss any of the events leading up to the jurisdictional/dispositional hearing; he did not argue that the Agency or the juvenile court failed to properly assess or consider the B.'s at any time at or before the jurisdictional/dispositional hearing. We decline to consider evidence and argument that was not before the juvenile court when it ruled. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 405 ["'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.'"].)

2.  *Placement after the younger children were removed*
    *from their placement with the older siblings.*

Next, the father argues that a violation of the relative placement preference occurred in January 2021, when the younger children were removed from their placement with the older siblings and placed with the R.'s.

Again, we lack jurisdiction. The asserted error occurred leading up to the 12-month review hearing, on March 8, 2021. In a report for that hearing, the social worker represented, "The relatives have been ruled out under CFS 361.3." The juvenile court ruled, "The child's [*sic*] placement is appropriate." It also set a section 366.26 hearing.

13

An order setting a section 366.26 hearing "is not appealable at any time" unless "[a] petition for extraordinary writ review was filed in a timely manner." (§ 366.26, subd. (*l*)(1)(A).) "All orders issued at a hearing in which a section 366.26 hearing is ordered are subject to section 366.26, subdivision (*l*) and must be reviewed by extraordinary writ. [Citations.]" (*In re Tabitha W.* (2006) 143 Cal.App.4th 811, 817.) At the 12-month review hearing, the juvenile court advised the father of the writ requirement. Nevertheless, he failed to file a writ petition. This prevents us from reviewing the asserted error.[7]

Moreover, once again, the father forfeited his present contention by failing to raise it in the juvenile court. At the 12-month review hearing, he asked to have four relatives assessed for placement. However, he did not contend that the Agency or the court had *already* violated the relative placement preference by failing to consider these relatives back in January 2021, when the younger children's placement was changed.

The father argues again that the asserted error "illuminate[s]" the asserted error in denying his section 388 petition. This time, he did raise this argument below. At the hearing on the section 388 petition, his counsel argued that the Agency failed to reassess relatives when the younger children's placement was changed; he also argued that the July 27, 2020 minute order and the 6.7 report — both stating that the B.'s were not

---

[7]     Once again (see fn. 5), with regard to the orders at the 12-month review hearing, we do not reach the Agency's contention that the father lacks standing.

protective — were incorrect. Thus, we can consider these matters, not as independent grounds for reversal, but in evaluating the denial of his section 388 petition.

### 3. *Requiring the father to file a section 388 petition.*

The father contends that the juvenile court erred on November 3, 2021, when he requested a contested placement hearing, by requiring him to file a section 388 petition before it would consider placement with the B.'s.

Preliminarily, the Agency claims that the juvenile court did not actually require the father to file a section 388 petition. In context, however, it is clear that it did. The father was requesting consideration of four relatives. The Agency argued that the juvenile court had already denied placement with L.C. and the B.'s. In response, the juvenile court set a hearing on placement with M.C. only; it added, "[I]f you need to file any 388 petition, you may do so." In other words, it refused to set a hearing on placement with L.C. and the B.'s in the absence of a section 388 petition.

A parent who wants the juvenile court "to change, modify, or set aside any order of court previously made" may file a petition under section 388. A section 388 petition can be used to request a change of placement. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 316-317.)

Here, the juvenile court had already ruled, on July 27, 2020, that placement with the B.'s was not in the best interests of the children. On March 8, 2021, it had approved the children's placement with the R.'s. The father was seeking to change both orders. Accordingly, the juvenile court could properly require him to file a section 388 petition.

The father notes that, under section 385, the juvenile court can change a prior order sua sponte. (See also *Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 113-116.) However, it is not required to do so. Any request *by the father* that it change a prior order was subject to the requirements of section 388.

The father also relies on *In re Isabella G.* (2016) 246 Cal.App.4th 708 (*Isabella G.*). There, because the parents used drugs and were in and out of jail, the paternal grandparents had been the primary caregivers. (*Id*. at p. 712.) When the child was not quite two, the parents took custody of her, but about a week later, they were arrested, so the child was detained. (*Id*. at pp. 712-713.) The grandparents requested placement. (*Id*. at p. 713.) The social services agency refused to assess them, because the child was in her second placement (counting a temporary shelter); the social worker said, "You'll have to wait a year until we can move Isabella again." (*Id*. at pp. 714.)

Thus, a year later, the grandparents requested placement again. The agency told them that "relative placement would only be considered if a change of placement became necessary." (*Isabella G., supra*, 246 Cal.App.4th at p. 714.) After the juvenile court set a section 366.26 hearing, they requested placement yet again; again, the agency refused to assess them, this time because the child was in a potential adoptive home. (*Id*. at p. 715.) Finally, they retained an attorney and filed a section 388 petition. (*Ibid*.) The agency assessed and approved their home, but it determined that a change of placement would be "traumatizing." (*Ibid*.) The juvenile court denied the section 388 petition because it was not in the child's best interests. (*Id*. at p. 713, fn. 4.)

16

The appellate court held: "We reject the argument the relative is required to file a section 388 petition to trigger a relative home evaluation, and may lose his or her right to preferential consideration for placement under section 361.3 if a section 388 petition is not timely filed. The obligation to assess a relative's home is triggered by the relative's request for placement of the child. [Citation.]" (*Isabella G., supra*, 246 Cal.App.4th at p. 722, fn. omitted.)

It also held: "The juvenile court further erred when it imposed a burden on Grandparents under section 388 to show that a new placement was necessary and that the *change of placement* was in the child's best interest. [Citation.] Section 361.3 *requires* the court to give preferential consideration to a request by the child's relative for placement, including an assessment of whether *placement* with a relative is in the child's best interest." (*Isabella G., supra*, 246 Cal.App.4th at p. 723.)

Thus, the court concluded: "[W]hen a relative requests placement of the child prior to the dispositional hearing, and the Agency does not timely complete a relative home assessment as required by law, the relative requesting placement is entitled to a hearing under section 361.3 without having to file a section 388 petition." (*Isabella G., supra*, 246 Cal.App.4th at p. 712.)

By its terms, this holding does not apply here. Here, it was the father, not a relative, who was requesting placement. The gist of the reasoning in *Isabella G.* is that all a *relative* has to do to trigger the relative placement preference is request placement.

(§ 361.3, subd. (a).) It is not inconsistent with either *Isabella G.* or section 361.3, subdivision (a) to require a *parent* to file a section 388 petition.

It is also significant that, in *Isabella G.*, the grandparents had been dealing exclusively with the agency; they came before the court for the first time when they filed their section 388 petition. Once they did, they had their first opportunity to present their claims based on the relative placement preference to the juvenile court, and the juvenile court had its first opportunity to consider them. Possibly the juvenile court had made prior orders regarding placement; however, it had not made any prior orders finding specifically that placement with the grandparents was inappropriate.

Here, by contrast, the father was before the juvenile court on July 27, 2020, when it considered the B.'s request for placement but ruled that placement with them was not in the best interests of the children. And the father was also before the juvenile court on March 8, 2021, when it ruled, "The child's [*sic*] placement is appropriate." Hence, it was appropriate to require him to file a section 388 petition.

### 4. *The father's section 388 petition.*

Last but not least, the father contends that the juvenile court erred by summarily denying his section 388 petition.[8]

---

[8] The Agency contends that the father "does not have standing in this appeal." Closely read, however, its argument is merely that he does not have standing to appeal from the order "rul[ing] out the relatives on July 27, 2020" — from "the denial of relative placement which occurred 18 months prior." It does not appear to contend that the father lacked standing to appeal from the denial of his section 388 petition. (See *In re Elizabeth M.* (1997) 52 Cal.App.4th 318, 322, 324 [mother had standing to appeal from

"[A] party's section 388 petition, seeking to change an order, must include facts showing: [¶] 1. Any change of circumstance or new evidence that may require changing the order; and [¶] 2. That the best interests of the child may be promoted by the proposed change of order." (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 672.) "[T]he court may summarily deny the motion if the petition fails to make a prima facie showing . . . . [Citation.]" (*In re Christopher L.* (2022) 12 Cal.5th 1063, 1080.) "The petition is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion. [Citations.]" (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415-416.)

The juvenile court found no changed circumstances because the B.'s "ha[d] been previously assessed and ruled out for placement due to their lack of being able to protect the children." This finding was not supported by substantial evidence. Admittedly, it was supported by the July 27, 2020 minute order and the subsequent 6.7 report — in isolation. However, as the father's counsel was arguing, they were both incorrect; the B.'s had actually been ruled out solely because they only wanted placement of the younger children. Later, the younger children had been placed separately from the older siblings, so this was no longer a reason to deny placement.

The juvenile court was right, however, albeit for the wrong reason. "[W]e review the lower court's ruling, not its reasoning; we may affirm that ruling if it was correct on

the denial of her section 388 petition, seeking placement with a relative, after reunification services had been terminated].)

19

any ground. [Citations.]" (*In re Natasha A.* (1996) 42 Cal.App.4th 28, 38.) There were no changed circumstances, as a matter of law, for two other reasons.

First, the father claimed that he was seeking to modify the July 27, 2020 dispositional order, which had found the B.'s unsuitable for placement. As changed circumstances, he noted that the younger children were no longer placed with the older siblings. Actually, however, at the 12-month review hearing in March 2021 — *after* the children's placement had *already* been changed in January 2021 — the juvenile court found that their placement was appropriate. Thus, the petition was actually seeking to change the March 2021 order. However, there had been no change of circumstances since March 2021. For this reason alone, the juvenile court had to deny the petition.

Second, there was another changed circumstance, which canceled out the changed circumstance on which the father relied: On March 8, 2021, the juvenile court had ordered adoption as the permanent plan, terminated reunification services, and set a section 366.26 hearing.

At least ordinarily, once the juvenile court has selected adoption as the permanent plan, terminated reunification services, and set a section 366.26 hearing, the relative placement preference does not apply. (*In re Sarah S.* (1996) 43 Cal.App.4th 274, 285-286; accord, *In re K.L.* (2016) 248 Cal.App.4th 52, 66; *In re Lauren R.* (2007) 148 Cal.App.4th 841, 855.) "Once reunification efforts have failed, and the juvenile court has before it a proposed permanent plan of adoption, it is the caretaker who has preference. [Citations.]" (*In re M.M.* (2015) 235 Cal.App.4th 54, 63-64.)

20

Courts have recognized only one exception: "'[W]here the relatives invoked the preference *before* the dispositional hearing, the agency and court failed to apply it at disposition, and the error was timely raised by a section 388 motion.' [Citations.]" (*Isabella G.*, *supra*, 246 Cal.App.4th at p. 721; accord, *In re R.T.* (2015) 232 Cal.App.4th 1284, 1300 (*R.T.*).) In both of those cases, it was the relatives who filed the section 388 petition. (*Isabella G.*, *supra*, at p. 715; *R.T.*, *supra*, at pp. 1293-1294.) Thus, they do not support the proposition that a *parent* is entitled to file a section 388 petition invoking the relative placement preference after the reunification period has expired.

These cases should not be extended to apply to a parent. A relative is not a party to the dependency and is rarely represented by counsel. Moreover, a relative must work through the social services agency; in a worst-case scenario, as the facts in *Isabella G.* and *R.T.* illustrate, the agency may fob off a relative with excuses (*Isabella G.*, *supra*, 246 Cal.App.4th at pp. 713-715) or make a show of assessing the relative without the intent of actually placing the child with the relative (*R.T.*, *supra*, 232 Cal.App.4th at p. 1297). The relative's only recourse is to file a section 388 petition (or other motion), often late in the process. (See *Isabella G.*, *supra*, at p. 718 ["The Agency acknowledges its failure to timely complete the relative home assessment was a significant contributing factor to Grandparents' delay in filing their section 388 petition."].)

By contrast, a parent has been a party to the dependency, assisted by counsel, all along. Thus, if the agency or the juvenile court fails to apply the relative placement preference properly, the parent has the immediate opportunity to object. Here, the father

21

claims that the relative placement preference was violated at and before the jurisdictional/dispositional hearing; however, he did not object at that hearing. (See part III.B.1, *ante*.) Similarly, he claims that it was violated when the younger children were removed from their placement with the older siblings; however, he did not object at the next hearing. (See part III.B.2, *ante*.) It would be unconscionable to allow a parent who has squandered such opportunities to object for the first time after the reunification period has expired.

Because we conclude that the "changed circumstances" prong was dispositive, we will not discuss the "best interests" prong.

IV

DISPOSITION

The order appealed from is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

MILLER

J.

FIELDS

J.

22