Filed 8/27/21  In re D.D. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re D.D., A Person Coming Under the Juvenile Court Law. | 2d Juv. No. B310083 (Juv. Ct. No. 20JV00217) (Santa Barbara County) |
| SANTA BARBARA COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v. S.D., Defendant and Appellant. | |

S.D., paternal grandmother (Grandmother) of infant D.D., appeals an order of the juvenile court denying her request for placement pursuant to Welfare and Institutions Code section

361.3.[1]  We conclude that the court did not abuse its discretion by denying placement and affirm.

*FACTUAL AND PROCEDURAL HISTORY*

D.D. (Father) and A.M. (Mother) are the parents of newborn D.D.  At birth, the infant had positive blood and urine tests for marijuana, amphetamines, methadone, and heroin.  The infant also suffered from drug withdrawal symptoms and was admitted to the hospital's neonatal intensive care unit.  Mother, after awakening from giving birth, asked if the infant tested positive for heroin.

On May 29, 2020, the juvenile court issued a protective custody warrant for the infant.  Santa Barbara County Department of Social Services (DSS) filed a juvenile dependency petition alleging that the newborn had suffered or was at risk of serious physical harm.  (§ 300, subd. (b).)  DSS also alleged that Mother and Father had criminal histories for drug and theft crimes.  The DSS detention report states that Mother has three older children who are no longer in her custody and care, including a child who also tested positive for methadone at birth.  Following a detention hearing, the court ordered the infant detained and placed the child's temporary care and custody with DSS.

In researching family placement, a DSS social worker spoke with a paternal aunt who reported that Grandmother and her parents (Great-Grandparents) have a history of illegal drug use, including methamphetamine.  The aunt described the family as "toxic."

---

[1] All statutory references are to the Welfare and Institutions Code.

2

DSS filed a jurisdiction and disposition report prior to the combined jurisdiction and disposition hearing. The report recommended that Mother and Father be bypassed for family reunification services pursuant to section 361.5, subdivision (b)(13).

Following the infant's release from the hospital, DSS placed the child with a foster-prospective adoptive family. Mother later informed a DSS social worker that Grandmother recently was asked to leave her family home by Great-Grandparents because Grandmother was under the influence of methamphetamine. Grandmother reportedly stated that she would not stop using illegal drugs. The paternal aunt also informed a DSS social worker that the "whole family has a history of drug abuse."

On August 25, 2020, Mother and Father rested on jurisdiction and submitted to DSS's recommendation regarding disposition. The juvenile court sustained the allegations of the dependency petition, bypassed family reunification services to Mother and Father, and set a permanent plan hearing for December 15, 2020.

*Grandmother's Requests for Placement*

Approximately one month following the infant's birth, Grandmother asked regarding placement. DSS informed Grandmother, however, that placement would not be considered until Mother and Father no longer lived with her. Grandmother then offered to "get rid of them." DSS instructed Grandmother to apply for placement after Mother and Father left her home; the agency then provided Grandmother with follow-up contact information.

Mother and Father eventually moved from Grandmother's and Great-Grandparents' home, and on November 10, 2020,

3

Grandmother received Resource Family Approval. The family home was clean, well-maintained, and furnished. Grandmother visited the infant monthly and demonstrated caregiving abilities.

On December 11, 2020, four days before the scheduled permanent plan hearing, Grandmother filed a trial brief regarding placement. Grandmother indicated that her home with Great-Grandparents had been approved. The juvenile court then continued the contested permanent plan hearing date until January 7, 2021, and ordered that the placement request be determined then.

Prior to the permanent plan hearing, DSS filed a section 366.26 report recommending that the juvenile court terminate Mother's and Father's parental rights and select adoption as the permanent plan.

The section 366.26 report also discussed Grandmother's request for placement. DSS specifically discussed the enumerated factors set forth in section 361.3 regarding relative placement. Many of the section 361.3 factors were positive, favoring placement, i.e., Mother and Father no longer lived with Grandmother, Grandmother's three monthly visits with the infant were affectionate and appropriate, and Grandmother intended to provide adoption permanency.

Other factors, however, were negative, i.e., Mother and the paternal aunt reported that Grandmother recently used methamphetamine, Mother believed that the foster-adoptive home was in her child's best interests, Grandmother left the family home due to a reported conflict with Great-Grandparents regarding drug use, and Grandmother tended to minimize Mother's and Father's illegal drug use. Grandmother reported

4

that she accidentally consumed methamphetamine when it was surreptitiously placed in her coffee at a fast-food restaurant.

In sum, DSS considered the section 361.3 factors and recommended that the infant remain in its present foster home because placement with Grandmother would not be in the infant's best interests.

On January 11, 2021, the juvenile court held a combined placement/section 366.26 hearing. The DSS social worker testified that reports of Grandmother's drug use and conflicts with Great-Grandparents were concerning. DSS was also concerned that Grandmother would not draw boundaries with Mother and Father regarding their drug use and visitation requests. Grandmother testified and denied recent drug use, conflict with Great-Grandparents, or temporary move-outs. She admitted that she applied for resource family approval on August 28, 2020, one week after the court bypassed family reunification services. Grandmother conceded that a DSS social worker interviewed her "for two days." Mother testified that she now supported placement with Grandmother because Grandmother would allow visitation if Mother ceased drug use.

Following argument by the parties, the juvenile court denied Grandmother's request for placement. The court decided that DSS performed a sufficient assessment and that the paternal aunt's statements to DSS and the hospital personnel regarding illicit drug use by Grandmother were persuasive. The court also stated that it was not impressed with Mother's testimony and that she mistakenly believed that she would reunite with the infant. Moreover, the court admitted that it was "struck by the fact that these parents have had significant drug issues and, for some period of time, [have been] living with

5

[Grandmother and Great-Grandparents]." Following its decision regarding placement, the court then found by clear and convincing evidence that it was likely infant D.D. would be adopted, and it terminated parental rights.

Grandmother appeals this order, asserting that she was not given a fair chance at relative placement.[2]

*DISCUSSION*

Grandmother contends that the juvenile court abused its discretion by denying her request for placement. She asserts that the DSS investigation was inadequate because DSS did not require her to drug-test or otherwise verify the paternal aunt's claims of family drug use. Grandmother adds that she has fully complied with the placement application, she has taken many hours of approved parent education training, and Mother and Father now support placement of the infant with her. She also faults the court's oral ruling as an insufficient explanation of the infant's best interests, suggesting that the court did not exercise its independent judgment.

The juvenile court possesses sound discretion regarding relative placement. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) When a relative requests placement, the law requires that the relatives be assessed and considered favorably, subject to the court's consideration of the best interests of the child, among other things. (*Id.* at p. 320.) Although the law provides that relatives are entitled to preferential consideration, there is no

---

[2] Mother and Father separately appealed the juvenile court's order. Through their respective attorneys, Mother and Father filed appellate briefs pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835. Accordingly, we dismissed the appeals.

evidentiary presumption that placement with a relative is in a child's best interests. (*Ibid.*)

Section 361.3, subdivision (a)(1)-(8) sets forth the factors regarding relative placement. The "first and foremost" of the factors, however, is the best interests of the child, including special physical, psychological, educational, medical, or emotional needs. (*In re Maria Q.* (2018) 28 Cal.App.5th 577, 592.)

Here DSS analyzed each of the section 361.3, subdivision (a) factors in its report. Factors opposing placement with Grandmother included the relative information that she had used methamphetamine and had conflict with Great-Grandparents regarding drug use. Grandmother had also tolerated Mother's and Father's long-standing drug addictions during their residence with her. Grandmother had applied for placement after reunification services had been bypassed and no change of placement of the child was being considered. Delay in assessing Grandmother's request for placement arose in part from her delay in removing Mother and Father from her home.

The juvenile court did not abuse its discretion by denying Grandmother's placement request. In ruling, the court referred to the DSS reports and the testimony at the hearing, as well as the statutory factors of section 361.3, subdivision (a), which were discussed in the report and during oral argument. (*Ross v. Superior Court* (1977) 19 Cal.3d 899, 913.) The court considered and applied the placement factors and exercised its independent judgment concerning the request for placement. (*In re Isabella G.* (2016) 246 Cal.App.4th 708, 719.)

7

*DISPOSITION*

The order is affirmed.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

M. Jude Egan for Defendant and Appellant.

Michael C. Ghizzoni, County Counsel, Lisa A. Rothstein, Deputy, for Plaintiff and Respondent.