Filed 11/17/21 In re S.J. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re S.J., a Person Coming Under the Juvenile Court Law. | B312377 (Los Angeles County Super. Ct. No. 21CCJP01097) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JAMIE M., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Judge Pro Tempore. Reversed and remanded with directions.

Lelah S. Fisher, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

_____

In this dependency case (Welf. & Inst. Code, § 300 et seq.),[1] Jamie M. (Mother) appeals from the disposition order, challenging the juvenile court's placement of her three-and-a-half-month-old son S.J. with his paternal grandmother over Mother's and the maternal aunt's requests the child be placed with the maternal aunt. Mother contends the juvenile court erred in making the placement decision without receiving an assessment of each relative from the Los Angeles County Department of Children and Family Services (DCFS) and without analyzing the relative placement factors under section 361.3. We agree and conclude the error was prejudicial, requiring reversal of the dispositional placement order.

## BACKGROUND

I.     **DCFS Places S.J. In Foster Care After His Parents' Domestic Violence Incident**

DCFS received a referral when S.J. was born in January 2021 because Mother and S.J. tested positive for THC, the active ingredient in marijuana. DCFS closed the referral after Mother agreed to participate in "Prevention and Aftercare" services.

_____

[1] Further statutory references are to the Welfare and Institutions Code.

2

On March 4, 2021, Mother and T.J. (Father)[2] were arrested for child endangerment after law enforcement responded to a domestic violence incident between them.  Mother and Father's son, one-and-a-half-month-old S.J., was transported to the hospital for a welfare check after officers observed Mother clutching S.J. tightly during the incident, and it appeared to the officers that S.J. might be in distress.  At the hospital, S.J. tested positive for cocaine.

A DCFS social worker interviewed Mother at the hospital, where Mother was in police custody and awaiting X-ray results regarding potential injuries she suffered during the domestic violence incident.  The social worker observed swelling and discoloration around Mother's left eye.  Mother told the social worker she wanted S.J.'s maternal aunt Donna J. to care for S.J. until she (Mother) was released from jail.

The social worker interviewed Donna J. and summarized their conversation as follows in the March 12, 2021 Detention Report:  Donna "stated she has concerns about S[.J.]'s safety while in the care of his parents.  She was informed by her sister's [Mother's] friend that [M]other and [F]ather are using meth.  She also has concerns with S[.J.]'s weight, [and] she stated at times her sister [Mother] wouldn't feed S[.J.]  She also had concerns that [Mother] was breastfeeding while she still consumed alcohol and other things that she shouldn't consume."

The social worker also interviewed S.J.'s paternal grandmother Kim J., who stated she had seen S.J. twice since he was born, and had seen Mother breastfeed and change S.J. on

---

[2] Father is not a party to this appeal.

those two occasions. Kim described Father and Mother's relationship as "toxic." Although Kim had never seen Father and Mother argue, Father told Kim he and Mother argued "a lot." Kim had never been to Father's or Mother's residence; she had only visited them at an Airbnb property. Kim was aware Father and Mother smoked marijuana, but she did not believe they used anything "stronger."

On March 5, 2021, DCFS obtained an expedited removal order for S.J. and placed the child on a hospital hold. When S.J. was discharged from the hospital on March 8, 2021—the same day Mother and Father were released from jail—DCFS placed the child in foster care. DCFS noted in the Detention Report there were two relatives to consider for placement, Donna and Kim, but DCFS was unable to place S.J. with either on March 8, 2021 because "further assessment of the relatives' criminal history and criminal waivers [was] needed." DCFS also noted in the Detention Report that Donna requested her home address be kept confidential due to [Father]'s behavior." The particular behavior was not identified in the report, but presumably it related to violent altercations between Father and Mother.

## II. DCFS Places S.J. With His Paternal Grandmother Kim After the Detention Hearing

On March 9, 2021, DCFS filed a dependency petition under section 300, subdivisions (a) and (b), alleging S.J.'s positive toxicology screen for cocaine (counts a-1 & b-1), Father and Mother's history of violent altercations in S.J.'s presence (counts a-2, b-2 & b-5), and Mother's and Father's histories of substance abuse (counts b-3 & b-4) endanger S.J.'s physical health and safety and place S.J. at risk of serious physical harm, damage, danger, and failure to protect.

4

Mother and Father appeared at the March 12, 2021 detention hearing. S.J.'s paternal grandmother Kim was also present. The juvenile court found DCFS made a prima facie showing S.J. was a person described by section 300. The court detained S.J. from Mother and Father, placed the child in DCFS's care, and ordered monitored visitation for the parents. The court also granted a temporary restraining order, protecting Mother from Father.

DCFS's counsel stated at the detention hearing that DCFS could not place S.J. with his paternal grandmother Kim or his maternal aunt Donna at that time because both had criminal histories requiring waivers, and DCFS needed to conduct resource family approval (RFA) assessments. S.J.'s counsel requested a copy of Kim's California Law Enforcement Telecommunications System (CLETS) criminal history report to review with Kim because Kim disputed she had a criminal history. The juvenile court ordered release of the CLETS report to S.J.'s counsel. The court also ordered DCFS to assess Kim and Donna (and any other relative requesting placement) and provide a recommendation to the court regarding placement of S.J. with a relative. The court granted DCFS discretion to place S.J. with an appropriate relative pending the adjudication/disposition hearing. Mother's counsel reiterated Mother's request (made while she and S.J. were in the hospital) that DCFS assess her relatives for placement. S.J. remained in foster care.

Later in March 2021, DCFS placed S.J. in his paternal grandmother Kim's home. DCFS never submitted to the juvenile court a written summary of its assessment regarding relative placement within the meaning of section 361.3, subdivision (a)(8)(B). Nor did DCFS ever update the court on whether Kim

5

had a criminal history, and if so, whether a waiver was granted for placement of S.J. in her home.

## III. S.J.'s Maternal Aunt Donna Files a Section 388 Petition, Requesting Placement of S.J. In Her Home

On April 8, 2021, Donna, through her attorney, filed a section 388 petition, requesting the juvenile court place S.J. in her home. Donna stated in the petition that she cared for S.J. for a month, beginning less than a week after his birth.[3] She rented an Airbnb property so Father would not know the location where she was caring for S.J. due to Father's history of violent altercations with Mother and his "attack on Mother in the hospital when the child [S.J.] was born." When Mother and Father were arrested on March 4, 2021, a week after Donna stopped caring for S.J., Donna was told (by someone not identified in her petition) that S.J. would be released to her on March 8, 2021. On March 8, 2021, she was told that DCFS placed S.J. in foster care "pending [her] assessment as a Resource Family." Several times between March 8 and 17, 2021, she was told she would be contacted by a social worker regarding placement of S.J. and provided information about LiveScan fingerprinting. According to the petition, on March 17, 2021, after Donna completed her part of the RFA assessment and was "await[ing] the final report," DCFS placed S.J. in his paternal grandmother Kim's home with no notice to Donna.

In the section 388 petition, Donna expressed concern about S.J.'s placement with Kim. Donna stated she had witnessed Kim

---

[3] Donna did not explain in the petition why Mother and Father were not caring for S.J. at that time.

yell and verbally abuse Mother in S.J.'s presence. Donna heard Kim tell Mother "she deserved the beating in the hospital by [Father] when the child was born." When Kim met S.J. for the first time it was "at a neutral place" because Mother did not feel safe revealing her home address to Kim. Without prior notice to Mother, Kim arranged for Father to come to the visit with S.J. During the second visit between Mother, S.J., Kim, and Father, Father gave Mother "two black eyes," according to Donna.

Donna asserted in her petition it was in S.J.'s best interest to be placed in her home. She stated she was married with a young child, was an associate professor at a community college, had "maintained a drug free and violence free lifestyle," and had no criminal history. She explained she would facilitate contact between S.J. and his parents and other relatives in a manner that ensured the child's safety, and she would provide a permanent placement for S.J. if reunification efforts failed.

The juvenile court did not act on Donna's section 388 petition prior to the adjudication/disposition hearing.

## IV. At Disposition, the Juvenile Court Continues S.J.'s Placement With Kim

DCFS's May 10, 2021 Jurisdiction/Disposition Report does not explain DCFS's rationale for placing S.J. with Kim or reveal whether Kim actually had a criminal history, as DCFS had previously reported. The Jurisdiction/Disposition Report merely states S.J. was "placed in a relative home that is deemed appropriate."

DCFS also stated in the Jurisdiction/Disposition Report that Donna "made threats" (not described in the report) to a social worker after DCFS placed S.J. in Kim's home rather than Donna's home. The social worker reported a "very aggressive

7

conversation" with Donna and her husband, during which they "continuously talked down to [the social worker,] telling him that he was failing at his job and implying that he did not take his job seriously and saw the family as a 'joke.'" Mother indicated to the social worker that she had "several personal and professional contacts within" DCFS, and she suggested there would be negative consequences for the social worker if he did not grant her requests. The social worker asked to be transferred off the case due to Mother's and Donna's "threats," and DCFS assigned the case to a different social worker. Regarding Donna's section 388 petition, DCFS stated, "due to the recent transgressions of [Donna] toward [the social worker], it is not deemed suitable that [Donna] have the minor placed in her home. Additionally, the minor is placed in a relative home that is deemed appropriate, therefore, it is not necessary for the minor to be replaced."

The Jurisdiction/Disposition Report also states Mother and Father were visiting S.J. while he was in Kim's care, and the visits had "reportedly gone well with no concerns."

At the May 11, 2021 adjudication/disposition hearing, Mother and Father requested the juvenile court dismiss the dependency petition in its entirety. Mother requested the court return S.J. to her custody or place S.J. with Donna. S.J.'s counsel and DCFS urged the court to sustain the petition, continue S.J.'s placement with Kim, and appoint Kim the co-holder of S.J.'s educational rights with Mother due to Mother's refusal to cooperate with DCFS and consent to medical examination of S.J.

The juvenile court began discussing the merits of Donna's section 388 petition before Donna's counsel was joined to the hearing by telephone. The court stated: "The child is currently with the paternal grandmother [Kim], and I'm not inclined to

change the placement at this time, but the Department [DCFS] can – certainly, if that placement turns out not to be appropriate for this child, then the Department can assess all appropriate relatives. So, at this time, I am going to deny the 388 hearing."

DCFS's counsel informed the juvenile court that Donna's counsel was on hold by telephone and had not been placed in the hearing. The court joined Donna's counsel to the hearing. The following exchange occurred:

"[The court]: With regard to the 388, we were just discussing this. We can set it for another hearing. We don't have time today. The child is placed with the paternal grandmother [Kim] at this time, and the children's [*sic*] attorney thinks that's appropriate. What I was going to do at this time is -- if you are in agreement -- is to have the Department assess the maternal aunt [Donna] should the paternal grandmother's placement not be appropriate, but I'm not inclined to move the child at this time. So --

"[Donna's counsel]: I understand.

"[The court]: If you want to, we can continue the 388, but what I'd rather do is just proceed that way.

"[Donna's counsel]: With the assessment?

"[The court]: With the assessment. So it's kind of a backup if the paternal grandmother's placement doesn't work out.

"[Donna's counsel]: Okay. And then you're saying take the 388 off calendar --

"[The court]: At this time –

"[Donna's counsel]: -- I'm sorry -- not set it.

"[The court]: I would just not set it. I would deny the 388 but just order the Department [to] assess the paternal aunt [*sic*]

9

in the event the placement with the paternal grandmother doesn't work out.

"[Donna's counsel]: I would have to ask my client to be able to do that because I know that I only have the authority to set it for a hearing at this time, not to take it off calendar with an assessment -- I'm sorry -- to not set it with an assessment.

"[The court]: All right.

"[DCFS's counsel]: For the record, I do think it's premature to file a 388 because they should be filed after disposition, but I do know we are doing disposition today so --

"[The court]: All right. So at this time, I will hold the 388 in abeyance, and you can contact the J.A. [judicial assistant] as to whether you want to take it off calendar; otherwise, I will set it for a hearing after we do the disposition. But I'm not -- at this point, I do think the child should remain with the paternal grandmother, and I would just agree to having her [Donna] assessed as a backup. So with regard to –

"[Donna's counsel]: Okay."

The juvenile court moved on to adjudication, sustaining all counts in the dependency petition except count b-5, which the court found repetitive of other counts. As to disposition, the court declared S.J. a dependent of the court and removed him from Mother and Father, continuing his placement with Kim. Over Mother's objection, the court appointed Kim the co-holder of S.J.'s educational rights with Mother. The court ordered reunification services and monitored visitation for Mother and Father. Over Father's objection, the court granted a three-year restraining order protecting Mother from Father.

## DISCUSSION

Mother contends the juvenile court erred in placing S.J. with his paternal grandmother Kim without receiving an assessment of Kim and Donna from DCFS and without analyzing the relative placement factors under section 361.3. For the reasons explained below, we agree.

"In any case in which a child is removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the child for placement of the child with a relative . . . ." (§ 361.3, subd. (a).) Relatives who come forward "desiring placement" of the child "shall be assessed according to the factors enumerated in" section 361.3, subdivision (a). (§ 361.3, subd. (a)(8)(B); *In re Isabella G.* (2016) 246 Cal.App.4th 708, 719 (*Isabella G.*) ["The Agency is *required* to assess those relatives seeking placement according to the factors described in section 361.3, subdivision (a)"].) "The county social worker shall document these efforts [to assess those relatives seeking placement] in the social study prepared pursuant to Section 358.1." (§ 363.1, subd. (a)(8)(B).) A social worker must "make significant efforts to gather the required information" to assess a relative according to the section 361.3, subdivision (a) factors before deciding the relative is "unsuitable and abandoning the assessment." (*Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1033 (*Cesar V.*).)

The enumerated factors in section 361.3, subdivision (a) include, but are not limited to, the best interest of the child, the wishes of the parent, the "good moral character of the relative and any other adult living in the home," the "nature and duration of the relationship between the child and the relative, and the

11

relative's desire to care for, and to provide legal permanency for, the child if reunification is unsuccessful." (§ 361.3, subd. (a)(1)-(6).)

Another enumerated factor set forth in section 361.3, subdivision (a) is the "ability of the relative to do the following:

"(A) Provide a safe, secure, and stable environment for the child.

"(B) Exercise proper and effective care and control of the child.

"(C) Provide a home and the necessities of life for the child.

"(D) Protect the child from his or her parents.

"(E) Facilitate court-ordered reunification efforts with the parents.

"(F) Facilitate visitation with the child's other relatives.

"(G) Facilitate implementation of all elements of the case plan.

"(H)(i) Provide legal permanence for the child if reunification fails. . . ." (§ 361.3, subd. (a)(7).)

"When considering whether to place the child with a relative, the juvenile court must apply the placement factors, and any other relevant factors, and exercise its independent judgment considering the relative's request for placement." (*Isabella G.*, *supra*, 246 Cal.App.4th at p. 719; *In re N.V.* (2010) 189 Cal.App.4th 25, 30.) "[W]hen a relative requests placement of the child prior to the dispositional hearing, and the Agency does not timely complete a relative home assessment as required by law, the relative requesting placement is entitled to a hearing under section 361.3 without having to file a section 388 petition." (*Isabella G.*, at p. 712.) "If the [juvenile] court does not place the child with a relative who has been considered for placement

12

pursuant to this section [§ 361.3], the court shall state for the record the reasons placement with that relative was denied." (§ 361.3, subd. (e).)

A parent attempting to reunify with his or her child has standing to challenge the child's placement at disposition in contravention of section 361.3. (*Cesar V.*, *supra*, 91 Cal.App.4th at pp. 1034-1035.) DCFS does not dispute this proposition. Nor does DCFS dispute (1) it was required to assess Kim and Donna for placement under the factors enumerated in section 361.3, subdivision (a); (2) it was required to document its assessment efforts in a social study report; and (3) the juvenile court was required to apply the factors enumerated in section 361.3, and any other relevant factors, and exercise its independent judgment in considering Kim's and Donna's requests for placement. None of this occurred here.

DCFS argues Donna "forfeited her request for placement at the dispositional hearing" or "invited error" by failing to object when the juvenile court continued S.J.'s placement with Kim and ordered DCFS to assess Donna "as a back-up placement." We disagree. Months before the disposition hearing, Donna came forward seeking placement of S.J., and her desire never wavered. When DCFS placed S.J. in Kim's home without documenting any assessment of Donna (or Kim), Donna retained an attorney to file a section 388 petition. As set forth above, Donna was entitled to a placement assessment under section 361.3 without having to file a section 388 hearing. Donna's attorney made clear at the disposition hearing that Donna wanted to go forward with her 388 petition, seeking a change in S.J.'s placement from Kim to Donna. The attorney also made clear she did not have authority from Donna to agree to the juvenile court's proposal to not set the

13

matter for a hearing to consider S.J.'s placement with Donna. DCFS and the juvenile court had a duty under section 361.3 to assess Donna for placement, and Donna did not waive such an assessment.

A juvenile court's error in making a placement decision in contravention of section 361.3 is subject to a harmless error analysis. We will not reverse absent a miscarriage of justice, meaning it is reasonably probable the court below would have reached a result more favorable to the appellant if the court had not erred. (*Isabella G.*, *supra*, 246 Cal.App.4th at pp. 723-724, citing *People v. Watson* (1956) 46 Cal.2d 818.) We conclude such a miscarriage of justice occurred here.

DCFS did not conduct a relative placement assessment in accordance with section 361.3, and the juvenile court did not apply section 361.3's enumerated relative placement factors before it made the decision at disposition to continue S.J.'s placement in Kim's home. The Jurisdiction/Disposition Report does not include sufficient information to evaluate placement of S.J. with Kim in light of the requisite factors. We cannot conclude the error was harmless because it is impossible to determine whether the juvenile court would have chosen to place S.J. with Kim over Donna if the assessments had been completed and the court had before it information related to the applicable factors. For example, such an assessment should have explored who would have been the more suitable placement to facilitate reunification in light of the parents' history of domestic violence and Mother's restraining order against Father. There is evidence in the record indicating Kim downplayed Father's violence toward Mother, and evidence suggesting Kim might not be the appropriate placement to prevent contact between Father and

14

Mother in violation of the restraining order. The record demonstrates that prior to S.J.'s detention from Mother and Father, Kim had only visited S.J. twice at a neutral location and had never visited Mother's home because Mother did not feel comfortable sharing the location with Kim. Moreover, the record does not indicate whether Kim wanted to provide a permanent placement for S.J., whereas Donna expressly stated on the record that she did.

On appeal, DCFS argues Kim is the appropriate placement because she does not have a criminal history and Donna does. DCFS initially reported to the juvenile court at the time of S.J.'s detention that both Kim and Donna had criminal histories requiring waivers and further assessment, with no elaboration as to the nature of those potential criminal histories. At the detention hearing, Kim disputed she had a criminal history. DCFS placed S.J. with Kim without ever clarifying on the record whether Kim has a criminal history. DCFS assumes on appeal this means Kim does not have a criminal history and Donna does. Donna disputed in her section 388 petition that she has a criminal history. This is the type of information DCFS should have clarified on the record before the juvenile court made its placement decision at disposition.

DCFS also argues Donna's "behavior toward DCFS staff"— her so-called " 'transgressions' "—"demonstrated she would not be a suitable placement option for the child." The vague account of Donna's interactions with the social worker formerly assigned to the case, as documented in the Jurisdiction/Disposition Report (and summarized above), does not demonstrate Donna would not have been the more suitable placement after assessment of all the section 361.3, subdivision (a) factors.

15

DCFS also argues Donna failed to protect S.J. from Mother and Father prior to S.J.'s detention, as Donna expressed concerns to the social worker about Mother's and Father's drug use, Mother's use of substances while breastfeeding, and S.J.'s weight/Mother's inconsistent feeding of S.J., as set forth in the Detention Report. The record indicates Donna stepped in to assist Mother in caring for S.J. in the month after S.J.'s birth. The record also indicates that after Mother had been caring for S.J. for a week without Donna's assistance, Donna expressed her concerns to the social worker. These facts do not demonstrate "a lack of protective capacity regarding S[.J.]," as DCFS argues on appeal.

Because we cannot conclude the error was harmless for the reasons discussed above, we reverse the portion of the disposition order placing S.J. with Kim. We recognize that the passage of time makes redress of the juvenile court's error more difficult, but we remand the matter to the juvenile court (1) for DCFS to complete a full placement assessment of Kim and Donna and to document such assessment, pursuant to section 361.3; and (2) for the juvenile court to hold a hearing where it will exercise its independent judgment on relative placement, applying the factors enumerated in section 361.3, subdivision (a). The assessment and hearing are to be completed within 45 days. To the extent DCFS already completed an assessment of Donna as a "back-up placement," this is no substitute for an assessment of the suitability of S.J.'s placement with Kim and Donna in the first instance in light of the factors enumerated in section 361.3, subdivision (a).

Because S.J. is an infant, and it is important for the placement assessment and hearing to occur on an expedited basis, the remittitur will issue immediately upon filing of this

16

opinion.  At oral argument, the matter was discussed, and neither party objected, in the event the disposition order is reversed, to immediate issuance of the remittitur or to the expedited, 45-day time period for completion of the placement assessment and hearing.

## DISPOSITION

The portion of the disposition order placing S.J. with the paternal grandmother is reversed.  The matter is remanded (1) for DCFS to complete a full placement assessment of the paternal grandmother Kim J. and the maternal aunt Donna J. and to document such assessment, pursuant to section 361.3; and (2) for the juvenile court to hold a hearing where it will exercise its independent judgment on relative placement, applying the factors enumerated in section 361.3, subdivision (a).  The assessment and hearing are to be completed within 45 days.  In all other respects, the disposition order is affirmed.  The remittitur is to issue forthwith.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.

17