Filed 6/6/22 In re A.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.R. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E077200 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J275382-83) |
| v. | OPINION |
| M.P., | |
| Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Steven A. Mapes, Judge. Affirmed.

Paul A. Swiller, under appointment by the Court of Appeal, for Appellant.

Tom Bunton, County Counsel and David Guardado, Deputy County Counsel for Plaintiff and Respondent.

]

This is the third appeal in this dependency case. The mother of three children has had open juvenile dependency cases since shortly after her second child tested positive for amphetamines at birth. She struggled to maintain sobriety since, and ultimately the juvenile court judge terminated her parental rights over all three children.

This appeal concerns the maternal grandfather's attempt to have the older two children placed with him late in the dependency. He argues the San Bernardino County Department of Children's Services (department) and San Bernardino Superior Court Judge Steven A. Mapes erred by not giving him preference for placement as a relative under Welfare and Institutions Code section 361.3 (unlabeled statutory citations refer to this code), which he raised in two petitions for change of order under section 388 filed nearly a year after termination of mother's reunification services and a few months before the children were found specifically adoptable and parental rights were terminated.

We conclude the juvenile court judge did not err by refusing to apply the relative placement preference under section 361.3, given the stage of the case, but should have treated grandfather's petitions as requests to modify the order continuing the children in foster care and select a new permanent plan for the children. As such, the judge should have ordered a hearing under sections 366.26 and 366.3. However, we also conclude any error was harmless because the first issue the judge would have considered at such a hearing would have been whether the children were adoptable. The judge in fact did find the children adoptable a few months later, and that finding would have removed the need to hear evidence on grandfather's request for permanent placement. We therefore affirm

the trial court's orders denying grandfather's section 388 petitions.

# I

# FACTS

As we've described in previous opinions,[1] in November 2017, mother gave birth to her second child, and both mother and daughter tested positive for amphetamine. Mother told the social worker she had started using methamphetamine in May 2015 and admitted she had smoked methamphetamine two days before giving birth. She told the social worker she had an autistic seven-year-old child living with her as well.

The maternal grandmother told the social worker mother had recently moved into her home. She said she was aware of mother's past drug use but believed she had stopped using drugs. She said the older sibling wasn't in school because he was being transferred to a school closer to home. After a meeting involving social workers, mother, the younger child's father, and the maternal grandparents, the department placed the family under a voluntary family maintenance plan, which included an agreement that mother would submit to random drug testing and enroll in a perinatal program.

Unfortunately, mother shortly thereafter forged a document claiming she completed a substance abuse treatment program and continued to use methamphetamine, so the department removed the children from her care. On January 11, 2018, mother was accepted into another substance abuse program, but was terminated about two months later for poor attendance and positive tests.

---

[1] *In re A.R. et al.* (Sept. 22, 2021, E076353/76815); *In re A.R. et al.* (Nov. 17, 2021, E077197), both nonpublished opinions.

Mother signed a voluntary authorization to detain the children from her care and admitted using methamphetamine. The children were placed into foster care and a Department of Justice background check on grandmother and paternal grandmother's home resulted in hits which made emergency placement in their home inappropriate.

On March 26, 2018, the department filed section 300 petitions on behalf of both children based on mother's drug use. At a hearing the next day, mother submitted a form indicating she wanted maternal grandmother and a friend to be assessed for placement. The juvenile court judge ordered the children detained on March 27, 2018.

On April 17, 2018, the court held a jurisdiction and disposition hearing. The department summarized their investigation in a report and recommended that reunification services be provided for mother and the younger child's father. The department learned from mother her own father had abused alcohol, but had been sober for three years. She identified her parents and a paternal uncle as part of her support system. The parents requested that the paternal uncle be assessed for placement; however, he had not been in contact with the department at the time the report was completed. The children were adjusting well to the placement and the foster caretaker.

In their six-month status review report, the department recommended terminating reunification services and setting a section 366.26 hearing to establish a plan of adoption. Mother had been referred to drug treatment programs four times and had been unsuccessful in completing any of them. She was terminated from two outpatient programs for continuing to test positive for substances and for nonattendance. She also

left an inpatient drug treatment program after three days. She had recently started another outpatient drug treatment program and had completed several sessions of individual counseling and parenting education classes. She was also pregnant and due to give birth to a third child in April 2019.

In October 2018, before the 6-month review hearing, the grandmother requested placement in the home she shared with grandfather. The social worker said they would be evaluated after submitting required information. However, on November 28, grandmother told the social worker she wanted to see what happened at the 6-month review hearing before starting the Resource Family Approval program (RFA). On December 12, the judge terminated reunification services, and the department requested authority to place the older children with grandmother after an assessment. The judge indicated mother would need to move out of the grandparents' house to assess the home for placement. "Mom, in order to assess your relatives, you have to move out right away. So, if you want the kids kept in the family, you have to move out right away, and let the Department know that so they can at least try to keep the kids in the family." The judge granted the department authority to place the children with the relatives after it was determined to be appropriate.

However, on December 19, the social worker and an interpreter met with grandmother to assess her home for possible placement. Grandmother said mother and her adult sibling both live in the family's two bedroom apartment. She said she had high blood pressure and was on dialysis every night due to kidney failure. She said she would

5

be the main care provider for the children. The department, based on this information, recommended the grandparents be ruled out for possible placement. Instead, the department represented they had performed a pre-assessment on the daughter's paternal uncle, and they planned to submit his family to the RFA for emergency placement after they had moved into a larger home.

In their section 366.26 report, the department recommended the children receive services under a planned permanent living arrangement with a goal of adoption. The children's caregivers weren't interested in adopting them but would continue to provide care until a concurrent planning home could be located.

On April 4, 2019, mother filed a section 388 petition requesting the children be returned to her care and her parental rights not be terminated. She said she had completed an inpatient substance abuse program, was living in transitional housing, and had enrolled in an outpatient substance abuse program. The court ordered an evidentiary hearing on the section 388 petition. The department recommended the juvenile court judge grant her petition and offer her reunification services.

On April 11, 2019, a juvenile court judge, San Bernardino Superior Court Judge Erin Alexander, granted mother's section 388 petition and gave mother additional reunification services. No one raised assessing the grandparents' home, but instead arranged visits with paternal uncle's family since his home was being assessed for possible placement.

6

The next month, on May 4, 2019, mother gave birth to her third child. She admitted she had used methamphetamine from November 2018 to January 2019 while she was pregnant. The department filed a petition on the new child's behalf under section 300, subdivisions (b) and (j), alleging appellant had a substance abuse and general neglect history based on what happened in her other children's dependency cases. At the detention hearing, the juvenile court judge found a prima facie case and ordered the child detained in mother's care. Just over a month later, mother had been discharged from her transitional housing for various infractions and moved back with her parents.

In August 2019, mother lost custody of the new child. The department removed the child from mother's care after she tested positive twice for methamphetamine and missed other random drug test appointments. The foster parents for the older children declined to have the new child placed with them, and he was placed in a separate foster care home. At the detention hearing, the judge found a prima facie case and ordered the child removed from mother's care. At the jurisdiction/disposition hearing, the court amended and sustained the allegations in the section 300 petition and granted services to mother.

Mother lived in the home of the maternal grandparents during the last reunification period. The judge ultimately terminated reunification services for mother as to all three children because she struggled in her recovery and failed to complete her court ordered treatment plan.[2] On January 22, 2020, the judge terminated reunification

---

[2] Grandfather's appeal doesn't involve the youngest son, so we discuss his case only to the extent relevant to his siblings.

services for the older two children and ordered them into permanent placement with a plan of adoption. On July 17, 2020, the court held a section 366.3 postpermanency review hearing for the older children, where the department reported it still didn't wish to provide permanency through adoption or guardianship, but would continue to provide care for them until a permanent placement could be found. The minors' attorney asked for a new placement in a home where the family was willing to adopt.

With a new placement pending, grandfather contacted the social worker, requesting placement. The social worker set a meeting, but grandfather failed to show, and the social worker said she hadn't heard from him since. The social worker represented mother still lived with grandfather. On September 2, 2020, the department placed the two older children in a new concurrent home.

On November 23, 2020, mother filed section 388 petitions asking the judge to return the children to her care, reinstate reunification services, or at least increase the frequency and duration of her visits. In the alternative, she requested assessment of the maternal grandfather for placement. Mother argued her petitions triggered a relative placement assessment and hearing, requiring the department to assess the relatives and the juvenile court to consider, among other things, whether the placement would be in the children's best interests.

On November 24, 2020, the judge summarily denied mother's petitions because (i) she hadn't alleged new evidence or a change in circumstances, (ii) her request didn't promote the best interests of the children, (iii) the assertion the change was in the

children's best interests was conclusory, and (iv) the grandparents had been ruled out for failing their initial background check and because mother lived with them. Mother appealed the order denying reunification services, which we affirmed, but didn't appeal the denial of placement with grandfather.

On January 14, 2021, grandfather filed a section 388 petition challenging the court's order denying placement with him. He said mother hadn't lived with him since September 2020. He said he sought to become their guardian or adoptive parent, which he said would be in their best interests. "I am a 54-year-old Christian man who works a full-time job as an auto technician. If they were to stay with me, they would maintain the home that they deserve. Every time I visit my grandchildren, I come with a broken heart, I do not resign myself that they are in a place where I do not doubt they will be treated well but I am completely sure that they will be fine with me I know that they love me and I undoubtedly love them I feel capable of being responsible and taking care of them I will dedicate all my time and I will do my best so that they are always well. [My grandson] has been with my wife and me since he was born, I was there when he took his first steps, his first words, the first day of school."

The judge summarily denied the petition, concluding grandfather failed to show a change of circumstances or that placement was in the children's best interests. On January 15, 2021, the judge set a section 366.26 hearing for the older children on May 17, 2021.

9

The issue of placement with grandfather came up again at a section 366.26 hearing for the youngest child on February 9, 2021. The department reported grandfather first contacted the social worker in August 2020 asking about placement of the two older children. The social worker repeated they had scheduled a meeting, grandfather failed to appear, and mother was still living in the home. At the hearing, mother again requested that grandfather be allowed to adopt her children. The judge denied the request, finding it would be detrimental to remove the child from his placement. The judge terminated parental rights over the youngest child and ordered adoption as his permanent plan.

On April 14, 2021, grandfather filed a new section 388 petition seeking placement of the older children in his care. Grandfather wrote, "Once again, the purpose of this letter is for the adoption of my grandchildren . . . . I'm a 54-year-old widowed man, live in a 2-bedroom apartment, have a degree and work full time as an Auto technician, no criminal history, and [mother] does not live at my home. I am begging you to reconsider. I understand the responsibilities that accompany adoption to keep them safe. I will dedicate my time and commit to meet their daily needs. Psychologically, financially and medically support my grandchildren, they will be attending daycare/school while I'm at work. I helped raise my grandson . . . I've been there for all my grandchildren please see attachment of pictures that I provided, and I hope you will reconsider." On April 15, 2021, the judge denied the petition without a hearing indicating on the form order that grandfather hadn't stated a change of circumstances or shown the placement would be in the children's best interests.

On May 17, 2021, the court held a section 366.26 hearing for the older two children. The judge found the children generally and specifically adoptable, concluded no exceptions to termination applied, and ordered parental rights terminated with adoption as the permanent plan.

On June 8, 2021, grandfather filed a notice of appeal in the older children's dependency case, challenging the two orders denying his separate section 388 petitions.

## II

## ANALYSIS

Grandfather points out he and mother requested the children be placed with him at least eight times during the dependency. Despite this, he complains, the judge never initiated an assessment under the RFA. He argues this was error, as was denying his section 388 petitions to change the order and have him assessed for placement. He asks us to reverse, remand, and direct the judge to order an assessment.

"In any case in which a child is removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative." (§ 361.3, subd. (a).) "'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated." (§ 361.3, subd. (c).) "If the court does not place the child with a relative who has been considered for placement pursuant to this section, the court shall state for the record the reasons placement with that relative was denied." (§ 361.3, subd. (e).)

11

"When considering whether to place the child with a relative, the juvenile court must apply the placement factors, and any other relevant factors, and exercise its independent judgment concerning the relative's request for placement." (*In re Isabella G.* (2016) 246 Cal.App.4th 708, 719 (*Isabella G.*).) Factors to consider in evaluating a placement include, but aren't limited to, (1) the best interests of the children, (2) the wishes of the parents, (3) proximity of the placement for visitation and reunification with the parents, (4) placement of any siblings and half-siblings in the same home, (5) the good moral character of the relative, (6) the nature and duration of the relationship between the child and relative, (7) the relative's ability to provide appropriate and safe care of the child and facilitate visitation with the child's other relatives, and (8) the safety of the home. (§ 361.3, subd. (a)(1)-(8).) "The linchpin of a section 361.3 analysis is whether placement with a relative is in the best interests of the minor." (*Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 862-863.) We review a juvenile court judge's determination regarding a child's placement under section 361.3 for abuse of discretion. (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067, superseded by statute on other grounds as stated in *Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1032.)

A. *Requests for Assessment Early in the Dependency*

Grandfather argues the department failed to follow through on their own obligations to have his home evaluated for placement. In fact, though, the children's relatives, not the department, failed to follow through. Most of the requests for a placement grandfather identifies were abandoned by the relatives after the department

12

responded to requests and began the evaluation process.

"At the outset of the case and during the reunification period, the agency and juvenile court are required to give 'preferential consideration' to a relative's request for placement, which means 'the relative seeking placement shall be the first placement to be considered and investigated.' [Citations.] Within 30 days from the child's detention in protective custody, the social worker is required to conduct an investigation to identify and locate all grandparents, adult siblings, and other adult relatives of the child, and provide information about the child's status to suitable relatives and must 'contact the relatives given preferential consideration for placement to determine if they desire the child to be placed with them.'" (*In re Maria Q.* (2018) 28 Cal.App.5th 577, 591-592 (*Maria Q.*) [quoting (§§ 309, subd. (e)(1) & 361.3, subd. (a)(8)(B)].)

The department and the juvenile court judge appear to have fulfilled these obligations. In October 2018, the grandmother requested placement in the home she shared with grandfather, and the social worker said they would be evaluated after they submitted some required information. However, a month later, when the department contacted her, grandmother demurred, saying she wanted to see what happened at the six-month review hearing scheduled for December 2018 before starting the assessment.

At that hearing, the department sought to move forward with evaluating the grandparents' home. The judge terminated mother's reunification services, and the department requested authority to place the children with grandmother after an assessment. However, mother still lived with the grandparents, so the judge warned her

she would need to move out of the house for the department to assess the home for placement. Nevertheless, the judge granted the department authority to place the children with the relatives once they determined it to be appropriate.

When the department met with grandmother later in the month to assess her home, grandmother revealed mother still lived there. She also revealed she had serious health problems that could negatively affect her ability to act as the primary caregiver. Based on these factors, the department recommended the grandparents be ruled out for placement and began pre-assessment for a paternal uncle. When mother filed a successful section 388 petition to reinstate reunification services a few months later, the focus had shifted to evaluating the paternal uncle's family. No one requested an evaluation of the grandparents' home at the hearing or suggested mother had moved out of their home, and as a result, the judge didn't make an order respecting an assessment.

While grandfather points to these requests for an assessment as a basis for his appeal, it was he and mother who failed to follow through, despite the fact the department took steps to begin the assessment process. These efforts ended because the grandparents declined to proceed and mother didn't move out of the home, which made the home inappropriate for placement. As a result, the department was never in a position to complete an assessment, the juvenile court judge was never called upon to decide whether placement was appropriate under the factors set out in section 361.3, subdivision (a), and the children were placed in foster care.

14

The same is true of the first time grandfather himself requested to be evaluated in August 2020, when the two older children were about to be moved to a new placement. The department sought to move the children because their foster caregivers weren't willing to adopt. At that time, grandfather asked to have an assessment of his home so the children could be placed with him. The department set an appointment with him, but he never showed up, and never followed through on the request, and the department placed the children in a new concurrent home. Again, there was no assessment and no order respecting placement with him because *he* failed to follow through.

B. *Requests for Assessment in Section 388 Petitions*

Well after the judge had terminated reunification services and when mother faced imminent termination of her parental rights, mother and grandfather made a series of requests that the juvenile court judge change his order and place the children with the maternal grandfather.

Mother filed section 388 petitions which she argued (among other things) should trigger a relative placement assessment and hearing, requiring the department to assess the relatives. The judge summarily denied those petitions for the reasons we've already noted.

Grandfather then took up the cause himself. In January 2021, he filed a section 388 petition challenging the order denying mother's petitions. In support he said mother hadn't lived with him since September 2020. He also let it be known that grandmother had passed away. He said he loved the children and would care for them. The judge

15

summarily denied the petition on the ground he failed to allege a prima facie case. In April 2021, he filed a new section 388 petition seeking reconsideration of his first petition but making the same points. The judge summarily denied that petition for the same reasons, and terminated parental rights a few months later, finding the children adoptable.

Grandfather argues he should have benefited from the relative placement preference, but the statute says the preference applies at the disposition hearing (§ 358) and later "whenever a new placement of the child must be made." (§ 361.3, subd. (d); see *In re Sarah S.* (1996) 43 Cal.App.4th 274, 285 ["[S]ection 361.3 assures interested relatives that, when a child is taken from her parents and placed outside the home pending the determination whether reunification is possible, the relative's application will be considered before a stranger's application"].) In addition, "[a]ppellate court decisions have consistently held that the relative placement preference applies at least through the family reunification period. During the reunification period, the preference applies regardless of whether a new placement is required or is otherwise being considered by the dependency court. If a new placement is required during the reunification period, the child welfare agency has an independent, affirmative duty to seek out relatives who would qualify for the relative placement preference." (*Maria Q.*, *supra*, 28 Cal.App.5th at pp. 592-593 [cleaned up].) However, in this case, the dependency was far removed from disposition and the requests came more than 10 months after mother's reunification services for the older two children had been terminated.

16

In *Isabella G.*, the Fourth District, Division One held the relative placement preference *does* apply even after the reunification period where the relative has come forward seeking placement of the child during the reunification period, and the agency has ignored the relative's request for placement. (*Isabella G.*, *supra*, 246 Cal.App.4th at pp. 722-723.) This is not such a case. As we've seen, it was the relatives who truncated the evaluation process after the department took initial steps to assess the grandparents' home. The grandparents first requested placement in October 2018, but when the department met with grandmother in November, she said she wanted to wait to begin the evaluation process until seeing the outcome of the six-month review hearing. At the hearing, the judge approved placement with the grandparents once it was determined to be appropriate, but when the department began their evaluation later in the month, mother was still living in the home—despite the judge's warning—and the department turned to evaluating other relatives. Thus, this is not a case like *Isabella G.* where relatives made a timely request for placement, but the department simply failed to fulfill their obligation to investigate. We conclude the section 361.3 relative placement preference does not apply in this case.

That doesn't mean the factors listed under section 361.3, subdivision (c) aren't relevant or applicable to a determination of postpermanency placement. As the Fourth District, Division One has held, "A request by a relative for postpermanency placement of a child in continued foster care is essentially a request to modify the order continuing the child in foster care by selecting a new permanency plan for the child. As such, it must

17

be heard under the statutory scheme that governs the selection of a permanency plan. If circumstances have changed since the permanency plan was ordered, the juvenile court may order a new permanency plan under section 366.26 at any subsequent hearing under section 366.3, or any party may seek a new permanency plan by a motion filed under section 388 and rule 5.570." (*Maria Q.*, *supra*, 28 Cal.App.5th at pp. 597-598.) Though a party may make this request directly under section 366.3, "a relative seeking modification of an order continuing a child in foster care must file a section 388 motion." (*Maria Q.*, at p. 598.) That is, in effect, what grandfather did in filing his section 388 petitions between the reunification period and the permanency planning hearing.

"To make a prima facie showing of changed circumstances sufficient to merit a possible modification of an order continuing a child in foster care, the relative must meet a threshold showing that she is fit and willing to permanently care for the child. For a child in continued foster care, a showing 'the best interests of the child may be promoted by the proposed change of order' is inherent in the statutory scheme. (See §§ 366.26, subd. (b), 366.3, subd. (h)(1).) Thus, generally, the presumption favoring permanent placement with a fit and willing relative over continued foster care should suffice to make a prima facie showing of best interests under section 388." (*Maria Q.*, *supra*, 28 Cal.App.5th at p. 598.) Grandfather satisfied that standard. He indicated he had a home for the children, was employed, had a plan for childcare, and established that he had been an important part of the children's lives. Crucially, he also indicated that mother had moved out of his home, which was the primary barrier to placing the children with him in

18

the past. This information was sufficient to make a prima facie showing and require a hearing.

In circumstances like these, if the petitioner meets the prima facie requirements under section 388, "the juvenile court should proceed under section 366.3, subdivision (d) (governing postpermanency review hearings for a child in foster care)." (*Maria Q.*, *supra*, 28 Cal.App.5th at p. 598.) That provision requires the judge to consider all permanency planning options for the child and set a permanency planning hearing unless it determines such a hearing is not in the child's best interest." Here, as in *Maria Q.*, the judge erred by proceeding under section 388 instead of treating the petition as *a request to modify the order continuing the children's foster care placement*. (*Id.* at p. 599.)

But also like in *Maria Q.*, the judge's error was harmless. If the judge had included the grandfather's petition in the section 366.26 hearing he scheduled for May 17, 2021, the first question for resolution would have been whether the children were adoptable. (*Maria Q.*, *supra*, 28 Cal.App.5th at p. 599.) Because the caregiver was willing to adopt the children (as was the grandfather), the court would have freed them for adoption, as he in fact did on May 17. As the court explained in *Maria Q.*, "Having selected the preferred permanency plan of adoption, the juvenile court would not have had any authority to order a lesser preferred permanency plan and need not have heard evidence on [the relative's] request for permanent placement (or guardianship). Thus, the summary denial of [the relative's] section 388 petition was harmless. It was not reasonably probable that a result more favorable to [grandfather] would have been

19

reached in the absence of the error in proceeding under section 388." (*Ibid.*)

It bears noting that grandfather could have applied to adopt the children at that point, but the current caregivers' application would have been entitled to preference. (*Maria Q.*, *supra*, 28 Cal.App.5th at p. 599, fn. 14 [citing § 366.26, subd. (k)].)

We therefore conclude any error in handling grandfather's section 388 petitions was harmless and will affirm the orders denying the petitions.

### III

### DISPOSITION

We affirm the orders of the juvenile court.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH
J.

We concur:

MILLER
Acting P. J.

RAPHAEL
J.