Filed 9/17/20 In re E.G. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re E.G. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B301395 (Super. Ct. No. 18JD-00154) (San Luis Obispo County) |
| SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>R.V. et al.,<br><br>    Defendants and Appellants. | |

R.V. and J.P., paternal grandparents (Grandparents) of three dependent children, appeal an order of the juvenile court denying their request for placement of the children pursuant to

Welfare and Institutions Code section 361.3.[1]  We conclude that the court did not abuse its discretion by denying placement, and affirm.

*FACTUAL AND PROCEDURAL HISTORY*

P.G. (Father) and S.G. (Mother) are the divorced parents of three minor children, E.G., A.G., and J.G.  On April 30, 2018, Father, his girlfriend, and the three children were involved in a high-speed vehicle rollover accident.  The children were not confined in child safety seats, the vehicle emanated a strong odor of alcohol, and empty beer cans lay inside.  Father and his girlfriend sustained injuries and the children had bruises.  Also, E.G.'s foot was swollen and lacerated, and she later complained of back pain.

The children were detained in foster care, and on May 2, 2018, the San Luis County Department of Social Services (DSS) filed a dependency petition.  The petition alleged that Father failed to protect the minors from substance abuse and the dangerous behavior of others, and failed to provide adequate care and supervision.  (§ 300, subd. (b).)  At the time, Mother was incarcerated following her conviction of drug trafficking.  (*Id.*, subd. (g).)  The three children were placed together in a licensed foster home.  They had extensive dental decay and reported that they ate sweets and chips in Father's home because sometimes there was no food.

The DSS jurisdiction and disposition report stated that the children's foster mother informed DSS that the children were reluctant to visit with Father, and E.G. began bedwetting.  DSS referred the children to mental health counseling.

---

[1] All statutory references are to the Welfare and Institutions Code.

2

On June 28, 2018, the juvenile court held a combined jurisdiction and disposition hearing. Mother and Father submitted to jurisdiction and DSS submitted based upon its reports. The court sustained the allegations of the petition, granted temporary custody and care of the children to DSS, and ordered Mother and Father to participate in family reunification services.

*Six-Month Review*

DSS prepared a status report for the six-month review hearing, recommending that the children remain in foster care and that Mother and Father continue to receive family reunification services. Mother had reported to the DSS social worker that Father and other paternal relatives physically abused the two older children.

Father substantially complied with his reunification services program and regularly visited the children during supervised visitation. The status report indicated that the children were doing well in their foster home and each child was attending mental health therapy. The two older children indicated that Father had struck them at times. The middle child expressed concern about returning to Father's care. At the conclusion of the review hearing, the juvenile court continued the children as dependents of the court and admonished Mother and Father to continue their reunification efforts.

*12-Month Review*

DSS filed a 12-month review status report recommending that the children remain in foster care, Mother receive additional reunification services, and Father's reunification services be terminated.

DSS reported that the children were doing well in foster care but that they feared returning to Father's care.  E.G. hid under chairs to avoid visits with Father and had nightmares that Father abducted her.  She experienced alarming emotional stress and bedwetting.  E.G. also reported that Father had physically abused her and her siblings and had left them without food.

A.G. physically resisted visits with Father, by kicking, screaming, and hiding underneath her bed.  On two occasions, she fled the school bus and ran into traffic.  A.G. also pleaded with her foster mother to return to her foster home.

J.G. also resisted visits with Father, hiding under furniture or running away.  J.G. began bedwetting and stated that Father had hit and shouted at him.  However, when visits with Father ended, J.G. would cry and ask to return to Father.

By the time of the 12-month review hearing, Father remained employed full time and was seeking improved housing.  The DSS social worker was concerned, however, that Father had not demonstrated behavioral changes.  Although he was engaging in counseling, he did not discuss the events leading to the dependency proceedings.  Father also denied that he had anger management issues and insisted that he had not left the children alone or without food.  Father complained to the social worker that DSS was not providing him necessary assistance and support, but when asked for specifics, he replied that he did not need DSS assistance.

On July 17, 2019, the juvenile court held a contested 12-month review hearing.  The DSS social worker, Father, and Father's girlfriend testified.

The DSS social worker opined that Father had not made significant progress in remedying the problems that led to the

children's removal, in part because he lacked insight into their needs. Although Father had completed the checklist of family reunification services, he still could not demonstrate that he could meet the emotional needs of the children. The social worker opined that it was not in the children's best interests for Father to continue receiving reunification services.

Father testified that he had learned to discipline his children with time-outs or limited computer time rather than physical methods. He admitted that he never had a driver's license and that he drove the children in his vehicle. Father also denied drinking alcohol or using drugs.

Following argument by the parties, the juvenile court later issued a ruling terminating family reunification services to Father. Specifically, the court found that although Father had consistently visited the children and had made significant progress as required by section 366.21, subdivision (g)(1)(A) and (B), he did not demonstrate his capacity and ability to complete the objectives of his treatment plan and provide for the safety, protection, physical and emotional well-being, and special needs of the children (*id.*, subd. (g)(1)(C)).

*Placement with Grandparents*

Soon after the children were detained, Grandparents sought placement of the children, but their shared housing situation was then unsuitable to care for the children.

On March 22, 2019, the children had a supervised visit with Grandparents. The visit involved the use of a language translator because the children did not speak Mixteco, the primary language used by Grandparents. By then, Grandparents were living in their own apartment to comply with the DSS placement licensing process. DSS processed Grandparents'

licensing request, although it had concerns that Grandparents previously had physically disciplined the children, primarily spoke the Mixteco language, did not have driver's licenses, and may not be able to maintain boundaries with Father.

In an addendum report, DSS discussed Grandparents' request for placement of the children. The report specifically discussed the enumerated factors set forth in section 361.3 regarding relative placement. Many of the section 361.3 factors were positive, favoring placement, i.e., Father supported the placement, Grandparents lived near Father (but not Mother), Grandparents passed the requisite background checks, the three children would remain together (as they were in the foster home), and Grandparents had frequent visits with the children who appeared happy to visit with them.

Other factors were either neutral or negative, i.e., the best interests of the children indicated placement in their current foster home, the children had mental health and emotional needs demanding continued stability and structure, Mother did not support placement with Grandparents due in part to their use of physical discipline and poor treatment of her, the children did not speak the Mixteco language and Grandparents did not speak the English language, and Grandparents did not drive and would rely on public transportation for the children's medical and therapy appointments. DSS also had concerns that Grandparents would not enforce boundaries with Father. During a meeting with the DSS social worker at Grandparents' apartment, Father arrived unexpectedly and was asked to leave by Grandparents.

In sum, DSS considered the section 361.3 factors and recommended that the children remain in their present foster

home because placement with Grandparents would not be in the children's best interests. DSS noted that after living with their foster parents for one year, the children had become bonded and attached to them. The foster family was also willing to be the concurrent permanent plan if reunification efforts were unsuccessful.

On August 12, 2019, the juvenile court held a contested hearing regarding Grandparents' placement request. The grandmother testified that she and her husband lived in a two-bedroom apartment and they had attended and successfully completed parent education, first aid, and CPR classes, among other classes. She stated that her first language was Mixteco and her second language was Spanish, but she did not speak the English language. The grandmother did not drive but her husband was in the process of obtaining his driver's license. Grandparents also had relatives and neighbors who were willing to drive the children to appointments. She acknowledged that the children had special needs, but could not describe those needs, other than the children were loving and missed their parents. The grandmother believed that the children were traumatized because they were not living with their parents. She stated that she would not understand if the children were too frightened to visit their father. The grandmother also stated that she would spank the children or give them a time-out and her husband would shout at them if the children required discipline.

Father also testified and explained that he and his girlfriend lived apart from Grandparents, about four blocks away. He stated that he understood that he could not visit the children or Grandparents without DSS permission.

7

Following argument by the parties, the juvenile court denied Grandparents' request for placement. The court denied the request based upon the children's best interests given their current and future needs, noting that the children had lived in their foster home for 15 months.

Grandparents now appeal this order.

*DISCUSSION*

Grandparents contend that the juvenile court abused its discretion by denying their request for placement.[2] They argue that the court's comments when ruling suggest that it considered only several of the factors set forth in section 361.3.

The juvenile court possesses sound discretion regarding relative placement. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) When a relative requests placement, the law requires that the relatives be assessed and considered favorably, subject to the court's consideration of the best interests of the child, among other things. (*Id.* at p. 320.) Although the law provides that relatives are entitled to preferential consideration, there is no evidentiary presumption that placement with a relative is in a child's best interests. (*Ibid.*)

Section 361.3, subdivision (a)(1)-(8) sets forth the factors regarding relative placement. The "first and foremost" of the factors, however, is the best interest of the child, including special physical, psychological, educational, medical, or emotional needs. (*In re Maria Q.* (2018) 28 Cal.App.5th 577, 592.)

---

[2] Grandparents applied for placement prior to the 12-month review hearing and termination of Father's reunification services. DSS processed the Grandparents' application many months prior to the 12-month review hearing, although the juvenile court held the contested placement hearing approximately three weeks after the termination of services.

Here DSS analyzed each of the section 361.3, subdivision (a) factors in its reports. Factors opposing placement with Grandparents included the significant language barrier, Grandparents' lack of driver's licenses, and grandmother's lack of understanding of the children's significant emotional trauma. The juvenile court received the DSS reports into evidence and, prior to ruling, recessed to review the facts and the law. The court then received oral argument from the parties regarding Grandparents' placement request.

In ruling, the juvenile court referred to the best interests of the children, relying upon their 15-month foster home placement. The court also referred to Grandparents' "significant barriers" to provide for the children's needs.

The juvenile court did not abuse its discretion by denying Grandparents' placement request. Grandmother's testimony revealed that she did not appreciate the children's special needs or the trauma they experienced in Father's care and from the vehicle accident. Grandparents also did not currently have driver's licenses and the language barrier with the children was a significant one. We presume the court considered the DSS reports and the testimony at the hearing, as well as the statutory factors of section 361.3, subdivision (a) which were discussed in the addendum report and during oral argument. (*Ross v. Superior Court* (1977) 19 Cal.3d 899, 913.) The court considered and applied the placement factors and exercised its independent judgment concerning the request for placement. (*In re Isabella G.* (2016) 246 Cal.App.4th 708, 719.)

9

*DISPOSITION*

The order is affirmed.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

PERREN, J.

TANGEMAN, J.

10

Roger T. Picquet, Judge

Superior Court County of San Luis Obispo

_____

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendants and Appellants.

Rita L. Neal, County Counsel, Jenna Morton, Deputy, for Plaintiff and Respondent.