Filed 10/13/25  In re J.H. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re J.H. et al., Persons Coming Under the Juvenile Court Law. | B336802 |
| | (Los Angeles County Super. Ct. Nos. 23CCJP02377, 23CCJP02377A, 23CCJP02377B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and  Respondent. | |
| v. | |
| M. H., | |
| Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed.

Serobian Law and Liana Serobian, under appointment by the Court of Appeal, for Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Avedis Koutoujian Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Father Michael H. appeals from a juvenile court exit order under Welfare and Institutions Code section 362.4[1] assigning physical and legal custody of his two children, J. H. and G. H., to their mother, with monitored visitation for father. Father argues that the juvenile court failed to consider the children's best interests, and the order was not supported by the evidence.

We affirm. Father asserts the court's findings regarding his drug abuse were unsupported, but the record includes ample evidence that father had unaddressed drug abuse issues and lacked insight into his mental health condition – a combination that contributed to a cycle of domestic violence in the children's home. The juvenile court did not abuse its discretion in finding that the children's best interests would be served by awarding mother sole physical and legal custody and ordering that father's visits must be monitored.

### FACTUAL AND PROCEDURAL BACKGROUND

The following is an abbreviated background summary, focused on issues relevant to father's arguments on appeal.

**A.  Detention**

J. H., born in February 2017, and G. H., born in February 2019, came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) in May 2023. A court had recently issued a temporary restraining order

---

[1]   All undesignated section references are to the Welfare and Institutions Code.

protecting mother and the children from father based on allegations of domestic violence. The report stated that father had "showed up unannounced" at mother's home, "threatening to kill the mother and the family."

A children's social worker visited mother in May 2023. Mother reported that father had a long history of drug use and domestic abuse. Mother said that father previously had been in a substance abuse treatment program, but he was dismissed from the program for taking drugs not prescribed to him. In 2021 father began showing signs of mental illness; in 2022 he was diagnosed with bipolar disorder and schizophrenia and was prescribed medication. The children witnessed parts of the abuse. In 2020 or 2021, for example, the children saw father "storming upstairs and charging at" mother. Mother closed the door to the room in which the children were watching television. Father then picked mother up, dragged her, and slammed her to the floor. After the incident, the children asked mother if she was okay, and mother told them she fell. When the social worker spoke with J. H. and G. H. in 2023, they both denied seeing or hearing any abuse.

Mother said she and father separated in April 2022 after another violent incident. In May 2022, father was involuntarily hospitalized after an "episode" in which he heard voices, became irate, and became violent with family members who attempted to restrain him. Mother sought a restraining order in 2023 after father "forced his way into maternal grandmother's house," threatening to kill mother.

A social worker's attempts to contact father in person and by phone were unsuccessful. A one-year domestic violence restraining order was entered in June 2023, protecting mother

3

and the children from father, and granting sole physical and legal custody to mother with supervised visitation for father.

In July 2023, DCFS filed a petition seeking jurisdiction under section 300, subdivisions (a) and (b). Allegation a-1 asserted that mother and father had a long history of engaging in violent confrontations, including that father hit, dragged, and choked mother, which placed the children at risk of serious physical harm. Allegation b-1 included similar allegations, and asserted that mother failed to protect the children. Allegation b-2 stated that father had a history of substance abuse that rendered him incapable of providing adequate care for the children, and mother failed to protect the children. Allegation b-3 stated that father had a history of mental and emotional problems that endangered the children, he failed to take his prescribed medications, and mother failed to protect the children.

At the detention hearing on July 31, 2023, the court found a prima facie basis for jurisdiction. The court ordered the children released to mother with monitored visitation for father.

**B.      Jurisdiction and disposition**

In the jurisdiction/disposition report filed on August 31, 2023, mother confirmed her previous statements about father's physical abuse, drug use, and psychological issues. She said the children did not directly witness the incident in which father slammed mother to the floor, but they were crying because they heard father screaming. Mother said father's previous drug treatment program in 2020 or 2021 was meant to address his addiction to Xanax and opioids. He did not complete the program. Mother did not think the children should be with father unmonitored because "[d]rug use impacts the way he can care for two children. You have to learn how to multi-task. They

4

need 100% of your full attention. I don't think that's something he can be capable of."

The children's paternal grandmother confirmed father's drug use and psychological issues, but said she thought mother was making allegations against father because she didn't want him to see the kids. Paternal grandmother said that "things started going wrong" with father around 2020 when he became addicted to opiates after an accident. Father's family "wanted to get him on the Suboxone again. Suboxone is for when you are addicted to Opiates." Father was hearing voices. Paternal grandmother said this was "[b]asically an auditory psychosis but [he] never . . . wanted to hurt anybody," it was just "paranoia." Paternal grandmother said that father was now "taking an injection to help him not go into a psychosis," and since he started going to church "he believed that God helped him not to hear the voices anymore." Paternal grandmother said that when father was in psychosis, the family did not allow him to be near the children. She said he would be safe around the children now because he was mentally stable. Father, who had three monitored visits per week with the children, did not make himself available to DCFS.

At the disposition hearing on September 15, 2023, mother pled no contest to the petition. Father's counsel argued that the petition allegations were "all lies made up by the mother," and that father posed no current risk to the children.

The court noted that father was in denial and lacked insight into the allegations. The court also observed that father did not make himself available to DCFS or participate in testing so there was a lack of contradictory evidence. The court sustained the petition but ordered it amended as to mother,

5

finding she had been "unable" to protect the children. The court ordered that the children remain in mother's care with monitored visitation for father. The court also ordered father to enroll in and complete a drug treatment program, mental health counseling, parenting classes, and a domestic violence program.

## C. Termination of jurisdiction

The interim review report filed on December 26, 2023 stated that the children were doing well living with mother and their maternal grandparents. At the time a children's social worker met with father on December 13, father reported that he had not yet enrolled in domestic violence or parenting classes. Father said he could not afford the programs and asked for financial assistance. Father said he suffered from anxiety and was meeting with a psychiatrist once per month online. Father stated that "he has met with many psychiatrists in the past and none has been able to meet his needs," because none would prescribe him the medication that "works for him," alprazolam (Xanax). Thus, father was taking alprazolam that he got from an uncle. Father also said he was taking prescribed suboxone "for pain and anxiety." Father said he was attending online drug and alcohol classes and Narcotics Anonymous. He did not have a sponsor. Between October 20 and December 6, 2023, father tested positive for alprazolam multiple times. He tested negative on November 17 and missed a test on December 6.

Father was visiting the children two to three times per week. G. H. enjoyed the visits, but sometimes J. H. did not want to take part. The restraining order remained in place.

The status review report filed February 28, 2024 stated that the children's visits with father continued to go well. Father had enrolled in domestic violence classes, parenting classes, and

6

individual counseling; his drug tests were negative for opioids and cocaine, and he had missed two tests. Father said he had not enrolled in a 12-step program and Narcotics Anonymous would not assign him a sponsor. Father said he did not know why the court ordered him to participate in drug treatment because he does not use drugs.

DCFS noted that father did not take responsibility for his actions that led to DCFS involvement, and remained in denial about his domestic violence, substance abuse, and mental health issues. Father admitted he suffers from panic attacks for which he takes medication, but DCFS noted it was "unclear if father has fully grasped how mental health issues could affect his well-being." In addition, father was "conflicting and defensive when [the social worker] reaches out to him." Father did "not seem remorseful and continuously blames [mother] for his conduct and actions."

The children were thriving in mother's care, and mother had completed parts of her court-ordered services. Mother was remorseful for not removing the children from father's care earlier. Mother said she would not be comfortable leaving the children alone with father, because he was in denial about what he did in the presence of the children. DCFS recommended that jurisdiction be terminated with a family law order granting custody to mother with monitored visits for father.

t the section 364 review hearing on March 21, 2024, father's counsel asked that the case remain open, and that father be granted unmonitored visitation. In the alternative, he asked that the case close with an order for joint custody and unmonitored visitation. Father's counsel argued that father was in compliance with his psychotropic medications and individual

7

counseling requirements, and he had completed five parenting class sessions. He also argued that the majority of father's drug tests were "negative."

Father submitted several exhibits, including a letter stating that father was attending domestic violence classes and parenting classes. He also submitted a letter from the Los Angeles Centers for Alcohol and Drug Abuse, which stated that father could not enroll in a substance abuse treatment facility because, based on the program's triage assessment, "we were unable to make an appropriate substance abuse diagnosis at this time." The attached triage papers stated that father was there because DCFS referred him, and father had "No history of alcohol or any other drugs used." A letter from MELA Counseling Services Center also stated that father did not meet the criteria for substance abuse treatment because father reported that he had "No history of alcohol or any drugs used."

The children's counsel joined DCFS in requesting that mother be granted full custody and father's visits be monitored. The children's counsel asserted that "liberalization is not appropriate at this time" because mother had addressed case issues, but "Father is absolutely in denial about the domestic violence, about his mental health issues and substance abuse issues. [¶] He continues to blame the mom for everything that happened to him and the family."

Mother's counsel "join[ed] wholeheartedly in minors' counsel['s] argument." She asserted that mother posed no risk to the children, the restraining order was still in place, and father, "despite his[ ] recent progress, does not appear to have demonstrated any insight." DCFS joined the minors' and mother's arguments.

8

The court found that the conditions justifying jurisdiction no longer existed as to mother. Conditions were not resolved as to father, because despite the evidence and the sustained petition regarding father's drug abuse, father had told the service providers he had no history of drug use. In addition, father had waited months to enroll in the court-ordered programs, and he had only completed five domestic violence classes. As a result, the court said, "it is too early to liberalize his visitation and too late to keep this case open." The court stated that it would terminate jurisdiction with an order giving mother sole physical and legal custody. The court ordered the parties to mediate the details of visitation, including holidays.

The final custody order, entered April 11, 2024, gave mother sole physical and legal custody. Father's visitation was to be monitored by paternal grandmother or a monitor at father's expense. On the form stating the reasons for supervised visitation, boxes were checked stating that father had not completed parenting classes, individual counseling, or a drug and alcohol abuse treatment program.

Father timely appealed.

## DISCUSSION

Father asserts that the juvenile court's award of custody to mother failed to take the children's best interests into account, and that the order requiring father's visits to be monitored was not supported by substantial evidence. Father also contends the court made errors in law by requiring father to participate in a drug treatment program because father did not have a substance abuse problem. We find no error.

Section 362.4 authorizes a juvenile court to make "exit orders" regarding custody and visitation upon terminating

9

dependency jurisdiction over a child.  (See § 362.4, subd. (a); *In re J.M.* (2023) 89 Cal.App.5th 95, 112.)  "'[I]n making exit orders, the juvenile court must look at the best interests of the child.' [Citations.]  The court must be guided by the totality of the circumstances and issue orders that are in the child's best interests." (*In re J.M., supra*, 89 Cal.App.5th at p. 112.)  We review the juvenile court's exit order for abuse of discretion; thus, we will not disturb the ruling unless the court has exceeded the limits of legal discretion by making a determination that is arbitrary, capricious, or patently absurd.  (*Id.* at p. 113.)

In asserting that the juvenile court's order was erroneous, father relies on the reasoning of (2023) 88 Cal.App.5th 1090, which also involved a father's challenge to a juvenile court exit order.  In that case, the Court of Appeal stated,  "Here, the juvenile court made no express finding that granting sole physical custody to mother would be in the children's best interests.  Instead, the court stated,  'It's not appropriate to reward a parent who does nothing in this court, *so* I'm not going to make it joint legal.'  (Italics added.)  The court thus granted mother sole custody to avoid rewarding father, who had refused to participate meaningfully in the case plan.  This was an abuse of discretion because an exit order must serve the best interests of the children, not reward or punish one parent or another for failing to comply with the case plan." (*Id.* at pp. 1094-1095.)

After quoting *In re N.M.*, father dedicates several pages of his appellate brief minimizing the events that led to jurisdiction before explaining that he is "not revisiting the jurisdictional findings, but only is attempting to clear the factual record."  He argues that he "substantially complied with the court's dispositional case plan," and he did not qualify for drug

treatment "given his negative drug tests for almost one year." Father argues that DCFS therefore "failed to meet its burden of proof that continuing out of home placement from father . . . was warranted to protect [the children's] safety or well-being, or that it was in their best interests." He also asserts that the order "limiting father to only monitored visits was not in [the children's] bests interests and must be reversed."

We are not persuaded. Unlike *In re N.M.*, the court below did not state or suggest that its order was intended to punish father for his lack of compliance. To the contrary, the court considered the best interests of the children by considering their safety while in the care of each parent. The court noted that the children were no longer at risk of danger in mother's care. Father, on the other hand, had admitted that he was taking alprazolam without a prescription, which he was getting from an uncle because he could not convince a doctor to prescribe it to him.[2] Most of father's drug tests were positive for alprazolam. Mother and paternal grandmother noted that father had a history of opiate addiction, and that he had been discharged from a drug treatment program for taking drugs. Father denied that history to at least two different drug treatment programs who then, on that basis, denied him admission. Father's continued disavowal and minimization demonstrated that he lacked insight into the behaviors that placed the children at risk. That blind

---

[2]    We note that possession of alprazolam without a prescription is illegal. See Health & Saf. Code, §§ 11350, subd. (a); 11057, subd. (d)(1).)

11

spot could continue to place the children at risk during unsupervised visits. (See, e.g., *In re William B.* (2008) 163 Cal.App.4th 1220, 1228 [it "generally is not in the minor['s] best interests" to place a child with a parent who has been "shown to be a chronic abuser of drugs who has resisted prior treatment for drug abuse"].) Based on the totality of the circumstances, we find no abuse of discretion in the juvenile court's custody award or visitation order.

Father also argues that the court made a "mistake of law" by requiring him to participate in a drug treatment program "when it was deemed by two separate substance abuse treatment programs that [he] did not meet the medical necessity for such treatment and was ineligible to enroll, because he tested negative for all substances for about a year and the Department failed to produce a reason for such treatment." He asserts it was error for the juvenile court to continue to "force" him to enroll in a program, despite these "circumstances beyond [father's] control.".

We typically review issues of law de novo. (See, e.g., *In re Isabella G.* (2016) 246 Cal.App.4th 708, 718.) However, father has not alleged a legal error. Instead, his argument is that the evidence did not support the juvenile court's order.[3] As discussed above, ample evidence supports the court's findings. And the exit

_____

[3] To the extent father is challenging the juvenile court's initial requirement that he complete a drug and alcohol program, that contention has been forfeited. (See *Vascos Excavation Group, LLC v. Gold* (2022) 87 Cal.App.5th 842, 856, 857.) That requirement was in the disposition order, which father did not appeal. "An unappealed disposition order is final and binding and may not be attacked on an appeal from a later appealable order." (*B. D. v. Superior Court* (2025) 110 Cal.App.5th 1132, 1152.)

order did nothing to "force" father to enroll in a drug treatment program; it simply noted that one reason for requiring supervised visitation was that father failed to comply with this aspect of the court's previous orders. Father therefore has failed to demonstrate any error of law.

## DISPOSITION

The juvenile court's order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

VAN ROOYEN, J.[*]

We concur:

ZUKIN, P. J.

TAMZARIAN, J.

---

[*] Judge of the San Luis Obispo Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.